NOT RECOMMENDED FOR PUBLICATION
File Name: 06a0004n.06
Filed: January 3, 2006

CASE NO. 04-5043

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

HERBERT WILLIAMS,

    Plaintiff-Appellant,

v.

TYCO ELECTRIC CORPORATION,

    Defendant-Appellee.

ON APPEAL FROM THE UNITED
STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF KENTUCKY

BEFORE: DAUGHTREY and GILMAN, Circuit Judges, and RICE, Senior District Judge.[*]

WALTER H. RICE, Senior District Judge. Plaintiff Herbert Williams, an African-American formerly employed by Defendant Tyco Electric Corporation ("Tyco"), filed this action, claiming his employer violated Title VII of the Civil Rights Act of 1964, the Age Discrimination in Employment Act ("ADEA") and the Kentucky Civil Rights Act when it terminated him, when it failed to offer him training that would allow him to remain employed, and again when it failed to recall him from his termination. The district court

---

[*]The Honorable Walter H. Rice, Senior United States District Court Judge for the Southern District of Ohio, sitting by designation.

granted summary judgment to the defendant, holding that Williams had failed to proffer sufficient evidence to make out a prima facie case of either age or race discrimination, or to demonstrate that Tyco's legitimate, non-discriminatory reason for terminating Williams was pretextual. The court also concluded that Tyco had offered sufficient evidence to show that Williams was not qualified for the position he sought, and that Tyco had not adopted, from its predecessor, employment policies that would have required it to "bump" employees with less service time or to rehire him. Williams appealed, contending that the district court should have allowed his claims to continue to trial. Though our reasoning herein differs somewhat from that of the district court, we affirm.[1]

The district court had subject matter jurisdiction based on 28 U.S.C. §§ 1331 (federal question jurisdiction) and 1367 (supplemental jurisdiction). Appellate jurisdiction is based on 29 U.S.C. §§ 1291 and 1294.

Herbert Williams, the plaintiff-appellant, began working for the former owner of

---

[1]As will be more fully discussed below, in determining that Williams failed to introduce evidence sufficient to make out a prima facie case based on his argument that he was replaced by others not in his protected class, the district court concluded that those he compared himself to were hired to fill positions different from the position he held at the time he was terminated. Consequently, they could not be considered his replacements. Upon review, this Court concludes that the undisputed evidence indicates that those to whom Williams compared himself were hired, after his termination, to fill positions created by changed circumstances that did not exist at the time he was terminated. Consequently, even were we to conclude, as Williams suggests, that they were hired to fill positions similar to the one he held at the time he was terminated, no reasonable jury could conclude that they were hired to replace him.

Tyco's Franklin, Kentucky, stamping plant in 1965 and worked there until 1977. He was rehired in 1983 and worked at the plant until 2000. During his second stint at the plant, he operated stamping machines, which were used to press small electrical parts from large rolls of metal. Sometimes, Williams worked on "high-speed" presses, but for the most part his experience was on "low-speed" presses. During this time, he consistently received favorable reviews from his supervisors.

Tyco bought the plant where Williams worked from Siemens Electronics in late 1999. Shortly thereafter, Tyco decided to close a companion plant in Marion, Kentucky, and move the presses used there to the Franklin plant. As a part of this planned consolidation, Tyco also eliminated many positions at the Franklin plant, undertaking what is generally known as a "reduction-in-force."

Joe Hall, the Fabrication and Support Manager at the Franklin plant, informed Williams that his position was one of those that would be eliminated during the consolidation. Williams told Hall that he did not wish to take part in a voluntary severance plan. In response, Hall told Williams that he could remain with Tyco, if he would agree to travel to the Marion plant to train on its low-speed presses, which would eventually be moved to the Franklin plant.[2]

Williams produced evidence indicating that both Hall and Robert Johnson,

---

[2]The Marion presses were, in fact, never moved to the Franklin Plant.

3

Williams' immediate supervisor, described the Marion low-speed presses as "junk." Williams also offered evidence that he believed those presses were unsafe, and that he would not require extensive training on them, because they were the same sort he had used when he first began work. However, he declined the offer, citing as reasons only the long commute and his lack of desire to be away from home for an extended period of time.

Tyco offered David Mayhew, a white employee, 52 at the time the decisions were made, the same choice it gave Williams. However, when Mayhew declined the offer to train on the low-speed presses in Marion, Tyco allowed him to begin training and working on the high-speed presses in Franklin. Hall, when questioned about the disparity in treatment between Mayhew and Williams, explained that Mayhew was allowed this opportunity because he had had prior experience with high-speed presses. Hall Dep. at 91-92, J.A. at 312-13.

Williams testified that Hall told him that no other jobs, other than the one that involved training in Marion, were available to him. He admitted that he saw other job postings for which he might have applied, but did not, because he did not want to go through further training. On April 7, 2000, Williams was terminated. He had no further contact with Tyco nor did he indicate to them that he was interested in applying for jobs that might come open. At the time of his termination, Williams was 59 years old.

A little over a month after Williams' termination, Tyco began hiring people for jobs

4

similar to those that Williams had left, "heavy set-up" positions operating high-speed presses. Tyco hired five new employees. Two of those employees had prior experience with high-speed presses and were recalled from a layoff. The other three hired to man the high-speed presses were already employed at the Franklin plant, and transferred to the high-speed stamping department, even though they had no prior experience on those machines. All five of these employees were younger than Williams and white, though two were also members of the same protected age group.

On June 21, 2001, Williams filed suit in U.S. District Court for the Western District of Kentucky, alleging that Tyco had selected him for termination on the basis of his age and race. The Complaint was filed under Title VII of the Civil Rights Act of 1964, the Age Discrimination in Employment Act and the Kentucky Civil Rights Act. On September 25, 2003, upon motion of the Defendant, the district court entered summary judgment against him. Williams moved in timely fashion to vacate the summary judgment, pursuant to Fed. R. Civ. P. 59(e). By order entered on December 17, 2003, the district court denied the Motion to Vacate. This appeal followed.

District court rulings on summary judgment are reviewed *de novo*, and the standard is the same as that employed by the district court. See Henderson v. Ardco, Inc., 247 F.3d 645, 649 (6th Cir. 2001). Summary judgment must be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). Of course, the moving party

5

always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.

Id. at 323. The burden then shifts to the nonmoving party who "must set forth specific facts showing that there is a genuine issue for trial." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986) (quoting Fed. R. Civ. P. 56(e)).

Once the burden of production has so shifted, the party opposing summary judgment cannot rest on its pleadings or merely reassert its previous allegations. It is not sufficient to "simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986); see also Michigan Protection and Advocacy Serv., Inc. v. Babin, 18 F.3d 337, 341 (6th Cir. 1994) ("The plaintiff must present more than a scintilla of evidence in support of his position; the evidence must be such that a jury could reasonably find for the plaintiff.").

Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). Summary judgment shall be denied "[i]f there are ... 'genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party.'" Hancock v. Dodson, 958 F.2d 1367, 1374 (6th Cir. 1992) (citation omitted). In determining whether a genuine issue of material fact exists, a court must assume as

6

true the evidence of the nonmoving party and draw all reasonable inferences in favor of that party. Anderson, 477 U.S. at 255.

Williams claims that he was terminated because of his age and race in violation of the Age Discrimination in Employment Act, Title VII of the Civil Rights Act of 1964 and the Kentucky Civil Rights Act. Williams may prove his claims through either direct evidence of discrimination, or through the McDonnell Douglas burden shifting analysis. Tallery v. Bravo Pitino Restaurant, Ltd., 61 F.3d 1241, 1248-49 (6th Cir. 1995).[3] Direct evidence is evidence that proves the existence of a fact without any inferences. Rowan v. Lockheed Martin Energy Systems, Inc., 360 F.3d 544, 548 (6th Cir. 2004).

In lieu of direct evidence of discrimination, the McDonnell Douglas framework employs a burden shifting analysis. The plaintiff is required to establish a prima facie case of discrimination at the outset. McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802, 93 S.Ct. 1817 (1973). "The burden then must shift to the employer to articulate some legitimate, nondiscriminatory reason" for the alleged discriminatory action. Id. "If the employer carries this burden, the plaintiff must then prove by a preponderance of the evidence that the reasons offered by the employer were a pretext for discrimination. The ultimate burden of persuasion remains at all times with the plaintiff." Newman v. Fed. Ex. Corp., 266 F.3d 401, 405 (6th Cir. 2001) (citations and internal quotation marks omitted).

---

[3] Williams' state law claims are analyzed in the same manner as his federal claims. See Kentucky Center for the Arts v. Handley, 827 S.W.2d 699 (Ky. App. 1991).

7

To establish a <u>prima</u> <u>facie</u> case of discrimination, a plaintiff must show that he (1) is a member of a protected class, (2) was qualified for his position, (3) suffered an adverse employment decision, and (4) was treated differently than similarly situated, non-protected employees. <u>See</u> <u>id.</u>; <u>see</u> <u>also</u> <u>McDonnell Douglas</u>, 411 U.S. at 802. If the plaintiff is able to make a <u>prima</u> <u>facie</u> showing of discrimination, he "in effect creates a presumption that the employer unlawfully discriminated against the employee." <u>St. Mary's Honor Ctr. v. Hicks</u>, 509 U.S. 502, 506 (1993)(citation omitted). In that case, the burden of producing evidence of a legitimate, nondiscriminatory reason for the adverse decision falls on the defendant employer. <u>See</u> <u>id.</u> at 506-07. This is merely a production burden, not a persuasion burden. <u>See</u> <u>id.</u> at 507.

If, however, the defendant proffers such a justification, while an <u>inference</u> of discrimination may still be drawn from the plaintiff's <u>prima</u> <u>facie</u> evidence, the mandatory <u>presumption</u> of discrimination drops from the case. <u>See</u> <u>Texas Dept. of Community Affairs v. Burdine</u>, 450 U.S. 248, 255, n.10 (1981). It then falls on the plaintiff to rebut the defendant's proffered justification. To raise a genuine issue of material fact about the credibility of his employer's explanation, the plaintiff is required to produce evidence from which a reasonable jury could infer that the defendant's legitimate, non-discriminatory reason is pretextual. <u>See</u>, <u>Manzer v. Diamond Shamrock Chemicals Co</u>., 29 F.3d 1078, 1084 (6th Cir. 1994).

<u>Manzer</u> discussed the methods by which a plaintiff can establish pretext:

To make a submissible case on the credibility of his employer's explanation, the plaintiff is "required to show by a preponderance of the evidence either (1) that the proffered reasons had no basis <u>in</u> <u>fact</u>, (2) that the proffered reasons did not

8

*actually* motivate his discharge, or (3) that they were <u>insufficient</u> to motivate discharge." <u>McNabola v. Chicago Transit Authority</u>, 10 F.3d 501, 513 (7th Cir. 1993) (emphasis added and quotation marks omitted). The first type of showing is easily recognizable and consists of evidence that the proffered bases for the plaintiff's discharge never happened, i.e., that they are "factually false." [<u>Anderson v.</u>] <u>Baxter Healthcare</u>, 13 F.3d [1120, 1123-24 (7th Cir. 1994)]. The third showing is also easily recognizable and, ordinarily, consists of evidence that other employees, particularly employees not in the protected class, were not fired even though they engaged in substantially identical conduct to that which the employer contends motivated its discharge of the plaintiff. These two types of rebuttals are direct attacks on the credibility of the employer's proffered motivation for firing plaintiff and, if shown, provide an evidentiary basis for what the Supreme Court has termed "a suspicion of mendacity." <u>Hicks</u>, 509 U.S. at [511], 113 S.Ct. at 2749. As <u>Hicks</u> teaches, such a showing permits, but does not require, the factfinder to infer illegal discrimination from the plaintiff's <u>prima</u> <u>facie</u> case.

The second showing, however, is of an entirely different ilk. There, the plaintiff admits the factual basis underlying the employer's proffered explanation and further admits that such conduct could motivate dismissal. The plaintiff's attack on the credibility of the proffered explanation is, instead, an indirect one. In such cases, the plaintiff attempts to indict the credibility of his employer's explanation by showing circumstances which tend to prove that an illegal motivation was more likely than that offered by the defendant. In other words, the plaintiff argues that the sheer weight of the circumstantial evidence of discrimination makes it "more likely than not" that the employer's explanation is a pretext or coverup.

<u>Id</u>. at 1084 (emphasis in the original).

The first method of rebuttal is a garden variety contesting of the defendant's facts. <u>See id.</u> The second method of rebuttal is based on a showing of pretext. There, the plaintiff, while conceding the truth of defendant's facts and even admitting that such facts otherwise allow for the adverse action, argues that the proffered reason was not the motivating factor in the defendant's decision. <u>See id.</u> In the third method of rebuttal, as with the second method, the plaintiff may concede the truth of the defendant's facts, but here the plaintiff offers evidence that such a fact, even if true, could not justify taking the action. This might be shown by evidence that other similarly situated employees

9

engaged in the same action, but suffered no adverse action. It could also be shown, for example, by the existence of clear language in an employee handbook stating that such conduct is perfectly acceptable in the workplace.[4] In any of these events, if the plaintiff is successful in producing sufficient evidence from which a reasonable jury could infer that the defendant's legitimate, non-discriminatory reason is pretextual, a genuine issue of material fact is presented for the trier of fact on the discrimination claim or claims.

A.    *AGE DISCRIMINATION*

Williams offers, as direct evidence of age discrimination, two statements made by Hall, one statement made in an e-mail dated May 11, 2000, and one statement made during Hall's deposition. Brief for Appellant at 12-13. In the e-mail, Hall wrote:

> Please find attached a memo summarizing the staffing situation with the operators in the plastics and stamping departments who have requested severance packages. Even though allowing all employees who have requested the severance will require us to back-fill some positions, I feel this is the best approach. We will be allowing a high percentage of low performers to leave while loosing [sic] only a few good performers, whose average age is about 60. May I proceed with the plan to allow these people to receive their severance and begin soliciting replacements.

J.A. at 141. When questioned about this memo in his deposition, Hall admitted that he felt it would be better to let the older, good performers go because they would be retiring

---

[4]In Manzer, the Sixth Circuit suggested that the third method of rebuttal is usually best demonstrated by evidence of the comparative treatment of similarly situated employees. 29 F.3d at 1084. A plaintiff is not required to make that showing though, and the court offers its second hypothetical to help focus on the critical distinction between the second and third rebuttal methods. In both, the plaintiff concedes the facts, for if he did not, the rebuttal would come within the first method. The difference between methods two and three is that in the second such, the plaintiff further admits that the facts could ordinarily provide sufficient grounds for the adverse action, while in the third, he argues that they could not.

10

soon anyway. J.A. at 303.[5] Williams contends that these statements represent Tyco's "goal of eliminating older workers." Brief of Appellant at 13. Statements of this type do not constitute direct evidence of age-based bias. Rowan v. Lockheed Martin Energy Sys., 360 F.3d 544, 549 (6th Cir. 2004) (finding that statement made referencing the average age of workers was made in the context of a legitimate concern about approaching retirements and, consequently, did not constitute direct evidence of discrimination).

The ADEA "was prompted by concern that older workers were being deprived of employment on the basis of inaccurate and stigmatizing stereotypes." Hazen Paper Co. V. Biggins, 507 U.S. 604, 610, 113 S.Ct. 1701, 123 L.Ed.2d 338 (1993). As in Rowan, Hall's statements only acknowledge the truth that workers near the age of 60 are nearer to retirement (Hall Dep., J.A. at 303) and are not evidence of "inaccurate and stigmatizing stereotypes." Rowan, 360 F.3d at 548.

Williams offers no other direct evidence of discrimination and, therefore, must prove his case by using the McDonnell Douglas burden shifting analysis. That Williams is a member of the class protected by the ADEA is not disputed. He contends that three acts by Tyco constitute an adverse employment action: his termination, his employer's refusal to offer him the same opportunity to train as a high speed stamper as another employee, and its failure to recall him when it recalled younger, white employees.

a. *Termination*

---

[5]In his Brief, Williams cites to a page (304) that is not part of the Joint Appendix.

11

Tyco does not argue that Williams cannot satisfy the four prongs of the McDonnell Douglas analysis in support of his claim that he was terminated because of his age. Rather, it claims that he was terminated as part of a "reduction-in-force" ("RIF"). If an employee is terminated as part of a RIF, in addition to the regular McDonnell Douglas analysis, the employee must produce "additional direct, circumstantial or statistical evidence that age [or race] was a factor in his termination." LaGrant v. Gulf Western Mfg. Co., 748 F.2d 1087, 1091 (6th Cir. 1984). A RIF occurs when "business considerations cause an employer to eliminate one or more positions within the company." Brocklehurst v. PPG Industries, Inc., 123 F.3d 890, 895 (6th Cir. 1997). Tyco maintains that Williams was terminated as part of a RIF that saw the elimination of all low-speed presses at the Franklin Plant, whereas Williams contends that he worked as a Heavy Set-Up, and that Tyco replaced him with other workers in the Heavy Set-Up position, after he was terminated, through a process called back-filling. The distinction is an important one. "An employee is not eliminated as a part of a work force reduction when he or she is replaced after his or her discharge." Brocklehurst, 123 F.3d at 895.

The district court noted that the argument ultimately depends on how Williams' job is defined and concluded that he was not replaced because the new hires he compared himself to were not hired to perform the same job he was performing at the time he was terminated. However, to resolve the question of whether Williams was terminated as part of a RIF, the court need look no further than the issue of whether he was replaced at all. Even if those he claims were hired to replace him did in fact fill jobs similar to the one he held before his termination, the undisputed evidence suggests that they were hired, not to fill a position vacated by him, but in response to positions that opened after Williams had been terminated, created by changed circumstances that did

12

not exist at the time he was terminated.

Williams contends that the people hired to "back-fill" the Heavy Set-Up positions replaced him. As evidence to support this contention, Williams points to Hall's e-mail of May 11th, a communication sent more than one month after Williams' termination. According to the undisputed evidence, Williams was terminated April 7, 2000. On April 24, Joe Hall received an e-mail detailing a change in circumstances that would require the Franklin Plant to do more high-speed stamping than had been originally anticipated. On May 11, he composed an e-mail that discussed the need to back-fill some high-speed stamping positions in the event everyone who had requested the severance offered as part of the RIF were allowed to leave the company. From this evidence, the only reasonable inference that can be drawn is that the back-filling mentioned by Hall referred to positions created, not by Williams' termination, but by a change in circumstances that arose after Williams was terminated. Because Williams does not offer any evidence to contradict this, no genuine issue of material fact has been raised regarding Tyco's contention that Williams was not replaced, but was in fact terminated as part of a RIF.

Because Williams was terminated as part of a RIF, he is required to present "additional direct, circumstantial or statistical evidence that age [or race] was a factor in his termination." LaGrant, 748 F.2d at 1091. For additional direct evidence, Williams relies on Joe Hall's May 11th e-mail and his deposition testimony. As discussed earlier, this does not constitute direct evidence of discrimination.

Williams has also compiled statistical evidence that indicates that the majority of

13

those who left the Franklin Plant were part of the protected age group, statistics that he contends represent evidence that Tyco was systematically eliminating older workers. However, most of those who left as part of the RIF did so voluntarily. This fact reduces the value of his statistical evidence. Simpson v. Midland-Ross Co., 823 F.2d 937, 943 (6th Cir. 1987) (finding that, where plaintiff relied on a small sample that might have included employees who left the workforce after accepting an early retirement incentive or who might have accepted employment elsewhere, and failed to place statistics in a relevant context, statistical evidence was not probative of discrimination). Further, his sample includes a department of only 20 employees, and only five employees who left the company, voluntarily or otherwise, as part of the RIF. Reliance on such a small sample is suspect and can undermine the probative value of the statistical evidence. Id.

Because Williams' statistical evidence does not distinguish between employees who left the company voluntarily and those, like him, who were terminated, and because of the small sample size used, the evidence is not probative of discrimination. Because he has failed to offer any additional evidence that age played a factor in his termination, he has failed to make out his prima facie case of age based discrimination under the ADEA.

b. *Training*

Williams next contends that Tyco discriminated against him on the basis of age when it offered training on the high-speed presses to Mayhew that it did not offer to him. The final element of the McDonnel Douglas framework requires that a plaintiff present evidence sufficient to allow a reasonable jury to conclude that a similarly situated, non-protected employee was treated differently. At the time of his termination Williams was

14

59 and Mayhew was 52. Both were members of the protected class. In Grosjean v. First Energy Corp., the Sixth Circuit explored the question of when an age difference between two members of the protected class becomes significant enough to satisfy the final element of the McDonnell Douglas prima facie case. 349 F.3d 332, 336-40 (6th Cir. 2003). In Grosjean, this Court established a bright line rule, holding that an age difference of six years or less was not significant, absent additional evidence of discrimination. Id. at 340. Therefore, according to the rule adopted in Grosjean, the seven year difference in age might be sufficient to satisfy the fourth element of the McDonnell Douglas analysis. Despite this, he cannot make out a prima facie case of age discrimination because when an adverse employment action is taken in the context of a RIF, Williams must go beyond the four prongs of the McDonnell Douglas analysis and introduce additional evidence, whether direct, circumstantial or statistical, that would lead to an inference of impermissible, age-based discrimination. See Barnes v. GenCorp. Inc., 869 F.2d 1457, 1466 (6th Cir. 1990) (reasoning that a plaintiff could produce additional evidence of discrimination by showing that he possessed superior qualifications to a younger, retained coworker). As noted earlier, Williams has failed to produce any such evidence, and consequently his prima facie case fails.

c. *Recall*

In his final claim of age discrimination, Williams contends that Tyco discriminated against him on the basis of his age when it recalled two younger workers, and promoted three younger such from within to work the high-speed presses. Because Williams never informed Tyco that he would like to be considered for other positions at the plant should they open up, its decision to hire other, younger, employees to man the high-speed presses is only cognizable as a claim of age discrimination <u>if</u> Tyco had a duty to inform him of the position, and to recall him if he wanted it.

Williams contends that Tyco had such a duty to him. To support his contention, he argues that Tyco had adopted the employee handbook of the Franklin Plant's previous owner, and that one of the policies in the handbook required that employees recalled from layoff be recalled in order of seniority.[6] Tyco denies having adopted the handbook in question, and denies having any recall policy that would require it to recall Williams in the manner that he suggests.

As evidence of Tyco's adoption of the earlier handbook, Williams cites a letter from Tyco's attorneys in response to an EEOC "request for information." The letter states in relevant part:

> I am transmitting the bulky items identified in your Request for Information as follows:

---

[6]The portion of the employee handbook relied upon by Williams refers to a recall policy for employees who are laid off. The evidence here indicates that Williams was terminated as part of a RIF. However, because there is insufficient evidence to allow the conclusion that the handbook in question was adopted by Tyco, the difference, if any, between the referenced layoffs and his termination is immaterial.

16

No. 8 - Enclosed is a copy of the applicable employee handbook.

J.A. at 243. Williams' contention that this letter and the attached handbook is evidence of Tyco's adoption of the handbook is flawed. There is nothing in the record to suggest what "Request for Information... No. 8" sought to have produced. Absent such evidence, it is impossible to tell to what the employee handbook is "applicable." To conclude that the letter to the EEOC constitutes evidence of Tyco's adoption of the employee handbook requires a logical leap too broad to create a genuine issue of material fact. Because Williams has introduced no evidence that would allow a reasonable jury to conclude that Tyco had a duty to inform him of new vacancies, and to give him priority in hiring to fill those vacancies, he has failed to create a genuine issue of material fact. "Where an employer reduces his workforce for economic reasons, it incurs no duty to transfer an employee to another position within the company. *A fortiori*, an employer has no duty to recall laid-off employees when a new position opens up." Almond v. ABB Industrial Systems, Inc., 56 Fed.Appx. 672 (6th Cir. 2003) (unpublished decision) (internal citations and quotation marks omitted).

Williams has failed to introduce sufficient evidence to make out a prima facie case of age discrimination. It is therefore not necessary to explore whether, as he contends, Tyco failed to introduce evidence to support its legitimate, non-discriminatory reason for terminating him or whether that reason was a pretext for illegal discrimination.

B.    *RACE-BASED DISCRIMINATION*

Williams offers no direct evidence of race-based discrimination, instead attempting to prove his claim using the McDonnell Douglas burden shifting analysis. His

17

claims of discrimination based on race mirror almost exactly his claims of discrimination based on age, with one notable exception. As statistical evidence of Tyco's race-based animus, Williams offers evidence that all of the African-American heavy set-up operators in the stamping department were eliminated in the RIF. While true, this fact is misleading. The evidence indicates that Williams was the only African-American heavy set-up operator in the stamping department prior to the RIF. As noted earlier, such a small statistical sample is not probative. For the same reasons Williams failed to make out a prima facie case of age discrimination, he has failed to make out a prima facie case of discrimination on the basis of race. Having failed to make out a prima facie case under Title VII or the ADEA, Williams claims made pursuant to the Kentucky Civil Rights Act also fail. See Kentucky Center for the Arts v. Handley, 827 S.W.2d 699 (Ky. App. 1991).

For the reasons discussed above, Williams has failed to make out a prima facie case of either age or race discrimination and the judgment of the district court is AFFIRMED.