**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**

File Name: 18a0554n.06

Case No. 17-6502

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**
Nov 02, 2018
DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| JOSEPH STEARMAN, | ) | |
| | ) | |
| Plaintiff-Appellant, | ) | |
| | ) | ON APPEAL FROM THE UNITED |
| v. | ) | STATES DISTRICT COURT FOR |
| | ) | THE WESTERN DISTRICT OF |
| FERRO COALS, INC, et al., | ) | KENTUCKY |
| | ) | |
| Defendants-Appellees. | ) | |

BEFORE:  SILER, MOORE, and ROGERS, Circuit Judges

**SILER**, Circuit Judge.  Joseph Stearman appeals the district court's summary judgment against him in this employment-discrimination case.  By 2014 coal companies faced a stark reality: the industry was in a slump.  For a variety of reasons, market conditions hampered production, slashed profits, and placed coal producers in precarious positions.  Ferro Coals was not immune from the downturn.  So it sought ways to cut costs.  And just about that time, Stearman took a business trip, without permission, on the company's budget.

Stearman, a vice president of sales at Ferro, began working at the company in 2009.  Five years later, amid the sagging coal industry, Stearman used a company credit card to head to Myrtle Beach on a business trip.  He had done so before, but this time he had not received pre-authorization.  Then, he was fired.  Stearman claims his termination amounted to age and disability

discrimination in violation of federal and state law. But to make out a prima facie case of discrimination, Stearman must show he was replaced by someone outside the protected class. Because he has not done so, and because his remaining claims lack merit, his suit fails, and we affirm.

I.

Kentucky-based Ferro Coals is a coal brokerage company that connects coal mines with coal consumers. Stearman began working at Ferro in 2009 as vice president of sales, an at-will employee, making $85,000 per year. He also received a performance-based commission. His job duties included identifying customers, responding to solicitations, responding to invitations to bid, and communicating with customers.

At times, Stearman's job required travel. And when he traveled, Stearman used a company credit card to cover the costs. The Ferro Employee Handbook, which Stearman signed when he began working for Ferro, required employees to seek pre-approval for business travel. Then, in 2012, Ferro suspended all business travel "due to declining market conditions in the coal industry." Employees still traveled nonetheless, but only when they received specific permission. Stearman followed protocol in 2013 when he requested and received approval to attend a seminar in Myrtle Beach. A year later, Stearman asked to go to the conference again. He never heard back. Yet he attended the seminar and charged about $2,300 to the corporate credit card.

All the while, Stearman went through personal hardships. Over a four-month period in late 2013 and 2014 he suffered a heart attack and struggled with the recurrence of prostate cancer. His mother died in July 2014; a month later, his wife fell ill. Needless to say, Stearman missed time from work. In his complaint, Stearman alleged that Ferro did not allow him to return to work after

he took medical leave, but he cited no evidence supporting that allegation. In testimony, Stearman stated that he returned to work "full steam" after receiving treatment.

Meanwhile, the market for coal waned. Ferro suffered losses: its largest customer left, and another large customer switched from coal to natural gas. Operating at an annual net loss of more than $190,000 in 2014, Ferro slashed its workforce from eighteen employees at the time Stearman began to twelve by the time he left. Ferro's CEO testified that the need for intermediate companies like Ferro had diminished because "most mines ha[d] entered directly into contracts with customers without a broker." As the demand for companies like Ferro declined, so too did Ferro's need for a vice president of sales.

Ferro fired Stearman in August 2014, when Stearman was 67 years old. A company official cited the Myrtle Beach trip as the reason for his termination. After the Kentucky Unemployment Insurance Commission awarded Stearman unemployment benefits, Ferro's owner wrote a letter to the Commission challenging its determination because, he argued, Stearman was terminated for cause. Stearman testified that he had no serious health issues and did not consider himself disabled at the time he was let go.

Ferro did not hire a new vice president of sales. Once Stearman left, another Ferro employee assumed Stearman's duties in addition to the employee's own preexisting role. The employee, Michael Canada, is nearly twenty years younger than Stearman and had been working as Ferro's field representative. Canada testified that his duties after Stearman's departure did not materially change.

Although Stearman had the highest monthly health-insurance premium of any Ferro Coals employee in 2013, his premium dropped significantly when he became eligible for Medicare. In

2014, Stearman's premium was $105 per month. The amount was substantially less than what Ferro paid for any other employee in 2014.

Stearman earned a commission bonus of twenty-five percent of net profits over $125,000, a bonus he received in 2013. Although Ferro had previously paid employees an additional Christmas bonus, it suspended those bonuses in 2013. No formal agreement between Stearman and Ferro addressed a Christmas bonus. And in his deposition, Stearman admitted that he was not entitled to an annual bonus.

After being fired, Stearman filed a complaint alleging: age and disability discrimination under the Kentucky Civil Rights Act ("KCRA"), a violation of the Kentucky Equal Opportunities Act ("KEOA"), interference with his ERISA rights under 29 U.S.C. § 1140, a violation of the Kentucky Wage and Hour Act ("KWHA"), and a conspiracy to violate civil rights under the KCRA. Ferro responded that Stearman was terminated for improper use of a company credit card in the broader context of the declining coal industry and a need to downsize. The district court granted summary judgment in favor of Ferro on all six of Stearman's claims.

## II.

We review a grant of summary judgment de novo. *Donald v. Sybra, Inc.*, 667 F.3d 757, 760 (6th Cir. 2012).

## III.

## A.

Stearman first argues Ferro discriminated against him based on age, in violation of the KCRA. Age-discrimination claims "brought under the KCRA are 'analyzed in the same manner'" as claims under the federal Age Discrimination in Employment Act. *Allen v. Highlands Hosp. Corp.*, 545 F.3d 387, 393 (6th Cir. 2008) (quoting *Williams v. Tyco Elec. Corp.*, 161 F. App'x 526,

531 & n.3 (6th Cir. 2006)). Plaintiffs must first make a prima facie case, requiring, in part, that plaintiffs show they were "replaced by someone outside of the protected class." *Allen*, 545 F.3d at 394. The district court determined Stearman failed to show he was replaced, and we agree.

When Ferro terminated Stearman, the company did not hire a new employee. Instead, Canada, an employee already working at Ferro, took over Stearman's duties in addition to his own responsibilities. This does not amount to replacement under the KCRA because an employee "is not replaced when another employee is assigned to perform the plaintiff's duties in addition to other duties, or when the work is redistributed among other existing employees already performing related work." *Grosjean v. First Energy Corp.*, 349 F.3d 332, 336 (6th Cir. 2003) (quoting *Barnes v. GenCorp Inc.*, 896 F.2d 1457, 1465 (6th Cir. 1990)). Replacement occurs only when the company hires a new person or reassigns an employee to take over the plaintiff's job. *Id.* "Spreading the former duties of a terminated employee among the remaining employees does not constitute replacement." *Lilley v. BTM Corp.*, 958 F.2d 746, 752 (6th Cir. 1992). Here, Ferro did not hire a new employee, and Canada was not reassigned. Stearman was not replaced.

Stearman urges us to ignore what *Grosjean* commands because, he argues, the replacement test applies only in so-called "reduction-in-force" (RIF) cases, not in situations where employees are fired for cause. And here, he contends, Ferro argued all along that it fired Stearman for cause—namely because Stearman took an unauthorized trip.

We note first that *Grosjean* itself involved a disciplinary demotion, not a reduction in force. *See* 349 F.3d at 334-36. Nor does *Grosjean* expressly confine itself to the RIF context. But in any event, Stearman's argument falters because even accepting that the Myrtle Beach trip triggered Stearman's termination, Ferro was engaged in a reduction in force. By the time Stearman left, Ferro had cut its workforce from eighteen to twelve. The trend continued, and the company now

has fewer than five employees, has a single contract remaining, and is winding down. Workforce reduction is a prerequisite to wrapping up business, and it can occur even when some of the employees let go engage in unwise conduct—like taking business trips without authorization.

In sum, after Ferro fired Stearman, Canada remained in his previous position but took over Stearman's duties in addition to his own tasks. But Ferro did not reassign Canada or any other employee. Nor did Ferro hire a new employee. And when that happens, no replacement occurs for age-discrimination purposes. *Grosjean*, 349 F.3d at 335-36. Because he was not replaced, Stearman cannot make out a prima facie case of age discrimination under the KCRA.

B.

Next, Stearman argues Ferro fired him based on a disability, violating the KCRA. As in the age-discrimination context, KCRA-disability-discrimination claims "are interpreted consistently with the standards developed under" federal law—here the Americans with Disabilities Act. *Bryson v. Regis Corp.*, 498 F.3d 561, 574 (6th Cir. 2007). Like age-discrimination plaintiffs, disability-discrimination plaintiffs must make a prima facie case. *Whitfield v. Tennessee*, 639 F.3d 253, 259 (6th Cir. 2011).

Stearman cannot do so because he cannot show he was disabled. Although he suffered heart problems and received cancer treatment, Stearman had no serious health issues at the time of his termination. As Stearman himself put it, he came back to work "full steam" after treatment. No record evidence suggests Stearman suffered any restriction in his ability to perform his job—thus eliminating a "regarded as" disability theory. *See Spees v. James Marine, Inc.*, 617 F.3d 380, 395-96 (6th Cir. 2010).

C.

Stearman's remaining claims fare no better. First, for the same reasons as in the KCRA context, Stearman's disability claim under the KEOA fails because he was not disabled. Nor did he consider himself disabled. He was not, and he cannot maintain his KEOA claim.

Second, nothing in the record supports Stearman's ERISA interference claim. Under 29 U.S.C. § 1140, employers may not discharge "a participant or beneficiary for exercising any right to which he is entitled under the provisions of an employee benefit plan." 29 U.S.C. § 1140. Stearman must show Ferro "engaged in prohibited conduct for the purpose of interfering with [his] attainment of any right to which he may become entitled under an ERISA-protected plan." *Roush v. Weastec, Inc*., 96 F.3d 840, 845 (6th Cir. 1996). An employer must have acted with the specific intent to violate ERISA. *Id*. We agree with the district court that Stearman has produced no evidence that Ferro terminated him because the company expected Stearman would cost substantial medical expenses. Nor does Stearman explain how Ferro intended to violate ERISA. No evidence supports Stearman's ERISA claim, so it fails.

Third, Stearman himself admitted in testimony that he had no entitlement to a Christmas bonus. The record supports his admission: no evidence suggests Ferro "with[e]ld from any employee any part of the wage agreed upon." Ky. Rev. Stat. § 337.060. So, as the district court determined, the company did not violate the KWHA.

Finally, because Ferro did not engage in age or disability discrimination under the KCRA, the company also did not commit conspiracy to violate the KCRA under Ky. Rev. Sat. § 344.280.

**AFFIRMED**.