RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206

ELECTRONIC CITATION: 2004 FED App. 0076P (6th Cir.)
File Name: 04a0076p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

---

ROSCOE C. ROWAN, III and
CHARLES A. WASHINGTON,
*Plaintiffs-Appellants,*

*v.*

LOCKHEED MARTIN ENERGY
SYSTEMS, INC.,
*Defendant-Appellee.*

No. 02-6160

Appeal from the United States District Court
for the Eastern District of Tennessee at Knoxville.
No. 00-00361—Thomas W. Phillips, District Judge.

Argued: January 29, 2004

Decided and Filed: March 11, 2004

Before: MERRITT and SUTTON, Circuit Judges;
FEIKENS, District Judge.[*]

---

[*] The Honorable John Feikens, United States District Judge for the Eastern District of Michigan, sitting by designation.

---

## COUNSEL

**ARGUED:** David A. Burkhalter, II, BURKHALTER, RAYSON & ASSOCIATES, Knoxville, Tennessee, for Appellants. Edward G. Phillips, KRAMER, RAYSON, LEAKE, RODGERS & MORGAN, Knoxville, Tennessee, for Appellee. **ON BRIEF:** David A. Burkhalter, II, BURKHALTER, RAYSON & ASSOCIATES, Knoxville, Tennessee, for Appellants. Edward G. Phillips, KRAMER, RAYSON, LEAKE, RODGERS & MORGAN, Knoxville, Tennessee, Kenneth M. Brown, Oak Ridge, Tennessee, for Appellee.

MERRITT, J., delivered the opinion of the court, in which SUTTON, J., joined. FEIKENS, D. J. (p. 12), delivered a separate concurring opinion.

---

## OPINION

---

MERRITT, Circuit Judge. Plaintiffs Rowan and Washington are former employees of Defendant Lockheed Martin Energy Systems, Inc. ("Lockheed") in Oak Ridge, Tennessee, at its uranium enrichment plant. They were laid off by Lockheed in December 1999 when Lockheed conducted a "reduction in force" due to Department of Energy budgetary cutbacks. The plaintiffs allege that they were selected for termination because of age discrimination and that they were unlawfully denied alternative jobs at Lockheed which went to younger employees. The district court granted summary judgment for the defendant, and the primary problem on appeal is whether some statements about age and retirement allegedly made by managers at the company raise

a sufficient inference of age discrimination to send the case to the jury.

## I. FACTS AND PROCEDURAL HISTORY

In 1996 Congress ordered the Department of Energy to conduct an inquiry into whether the nuclear workforce was prepared to deal with the possibility that many of its experts might soon be retiring. Accordingly, the Department established the "Chiles Commission" to look into the problem. In 1998 this commission visited Lockheed's Y-12 plant, where the plaintiffs worked. Lockheed reported to the Chiles Commission that 39% of the employees with "critical skills" in nuclear science and technology were in immediate danger to retire, and that a total of 78% would be eligible to retire within 10 years. Meanwhile, the Department of Energy's budget had been steadily declining throughout the 1990's, causing contractors like Lockheed to make severe job cuts. In one of these reductions in force the plaintiffs lost their jobs.

The plaintiffs' work at the plant did not place them in the critical skills category of workers. They each worked in the Clean Air section of the Environmental Compliance Department, Rowan as an "air permit engineer" and Washington in a "technical support" role, both helping to ensure compliance with the Clean Air Act. Rowan, who was 57 when terminated, and Washington, who was 63, allege that some of their supervisors made statements about the need to lower the average age at the plant in connection with the layoffs. They also allege that their immediate supervisor occasionally called them "old farts." For its part, Lockheed offers substantial evidence that its decisions were motivated by legitimate, non-age-biased reasons.

The trial court judge awarded summary judgment to the defendant on the grounds that the plaintiffs had failed to make out a prima facie case of age discrimination, and because in

any event they failed to show that the reasons articulated by the defendant were not a sham and a pretext for age discrimination. Although we disagree with the trial court as to whether or not the plaintiffs made out a prima facie case, we AFFIRM the judgment because no reasonable jury could find that the reasons articulated by the defendant for why these two plaintiffs were laid off were a sham and a pretext.

## II. STANDARD OF REVIEW

This Court reviews the District Court's grant of summary judgment de novo. *Terry Barr Sales Agency, Inc. v. All-Lock Company, Inc.*, 96 F.3d 174, 178 (6th Cir. 1996); *Hartsel v. Keys*, 87 F. 3d 795, 799 (6th Cir. 1996). In doing so it must review all facts and draw all inferences in a light most favorable to the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). That is not to say that it only reviews evidence favorable to the non-moving party. Instead, it must review all the evidence in the record. *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 148-49 (2000).

## III. DISCUSSION

Plaintiffs can establish an age discrimination case in two different ways. First, they can follow the *McDonnell Douglas* burden-shifting analysis. *Manzer v. Diamond Shamrock Chemicals Co.*, 29 F.3d 1078, 1081 (6th Cir. 1994) (*citing McDonnell Douglas v. Green*, 411 U.S. 792, 802 (1973)). According to this analysis, plaintiffs first establish a prima facie case of age discrimination. *Id.* At that point the burden shifts to the defendant, who must give legitimate, non-discriminatory reasons for the adverse employment decision. *LaPointe v. United Auto Workers Local 600*, 8 F.3d 376, 379 (6th Cir. 1993) (*citing McDonnell*, 411 U.S. at 802). If they do so, the burden shifts back to the plaintiffs, who must establish that the legitimate reasons offered by the defendant were just a pretext for decisions actually motivated by an

unlawful bias against age. *Id.* This was the test followed by the district court, who concluded that the plaintiffs had failed to make out a prima facie case, and that even if they had made such a case they had failed to show that the reasons offered by the defense were only a pretext.

In order to establish a prima facie case of age discrimination, plaintiffs must show (1) that they were members of a protected age class; (2) that they were discharged; (3) that they were qualified for the positions they held; and (4) that they were replaced by a younger worker. *Cox v. DOT*, 53 F.3d 146, 150 (6th Cir. 1995). However, in "reduction in force" cases like this one, the fourth prong is modified so that the plaintiffs must provide "additional direct, circumstantial, or statistical evidence tending to indicate that the employer singled out the plaintiff for discharge for impermissible reasons." *Ercegovich v. Goodyear Tire & Rubber Co.*, 154 F.3d 344, 350 (6th Cir. 1998). If the plaintiffs have made out a prima facie case of discrimination, the defendant can be awarded summary judgment only if no reasonable jury could conclude that the reasons offered for the plaintiffs' dismissals were only a pretext hiding a discriminatory motive.

The Sixth Circuit also recognizes an alternative test not discussed by the district court. If the plaintiffs can establish direct evidence of discrimination, then they need not go through the *McDonnell Douglas* burden-shifting analysis. *Talley v. Bravo Pitino Restaurant*, Ltd., 61 F.3d 1241, 1248-49 (6th Cir. 1995). Direct evidence is evidence that proves the existence of a fact without requiring any inferences. *Manzer*, 29 F.3d at 1081; *Laderach v. U-Haul*, 207 F.3d 825, 829 (6th Cir. 2000); *Jacklyn v. Schering-Plough Healthcare Prods. Sales Corp.*, 176 F.3d 921, 926 (6th Cir. 1999).

The plaintiffs fail to offer any direct evidence of discrimination. They offer no facts which would tie the decision to select Rowen and Washington for termination

because of their age. Instead, they point to several statements allegedly made by various members of Lockheed's management about the general need to lower the average age of their workforce. Even if such statements were made, they would not constitute direct evidence of age-based bias against these particular plaintiffs. They might, however, raise some suspicion as to Lockheed's motives, and to that extent we disagree with the district court that the plaintiffs fail to make out even a prima facie case of discrimination. But even granting that the plaintiffs made out a prima facie case, when understood in context these statements could not lead a reasonable jury to conclude that the numerous legitimate reasons offered by Lockheed were merely a pretext for age-biased discrimination.

As the Supreme Court has pointed out, the ADEA "was prompted by [a] concern that older workers were being deprived of employment on the basis of inaccurate and stigmatizing stereotypes" that productivity and competence decline with age. *Hazen Paper Co. v. Biggins*, 507 U.S. 604, 610 (1993). Although the plaintiffs quote *Hazen* for the proposition that the ADEA "requires the employer to ignore an employee's age," *id.* at 612, they take that statement out of context. Employers may not consider an employee's age for its own sake, but the ADEA does not prohibit them from considering other factors that correlate with age. *Id.* at 611. In *Hazen* the plaintiffs were allegedly fired to keep their pensions from vesting, and although the vesting of pensions correlates with age, the Supreme Court held that such a firing did not constitute discrimination under the ADEA (though it may violate other federal statutes, such as ERISA). *Id.* at 611-12. Since age and years of service are "analytically distinct," a decision based on years of service is "not necessarily 'age-based.'" *Id.* at 611. By contrast, the ADEA protects against "inaccurate and stigmatizing stereotypes." *Id.* at 610. Similarly here, a concern about impending retirements of nuclear scientists and skilled workers is not the same as a bias against age. We see no relevant difference

between a concern that important employees are about to retire and a concern that employee pensions are about to vest.

Furthermore, the legislative history of the Act counsels against reading the statute as forbidding any consideration of age under any circumstances. As this Court has recognized, the ADEA was not intended "to prevent an employer from achieving a reasonable age balance in [its] employment structure." *Laugesen v. Anaconda Co.*, 510 F.2d 307, 312 n.4 (6th Cir. 1975) (quoting legislative history from the ADEA). Instead, Congress recognized that at times an industry may be faced with the problem of an aging work force, and advised that such situations be treated "on a case-by-case basis." *Id.*

In this case, the evidence indicates that the concern for the average age of the work force in the plant was entirely motivated by the findings of the Chiles Commission, which concluded that the nuclear industry was in danger of having a high percentage of its most important, highly skilled workers retire soon. The worry was not that older people were less capable than younger workers. On the contrary, the concern was that most of the workers with critical skills were eligible or nearly eligible for retirement, and that when those people retired the nuclear industry could potentially suffer dearly. Although the statements allegedly made referred to the average age in the plant, there is every indication that concern for the average age was only motivated by a perfectly legitimate concern about upcoming retirements. Being worried about one's best workers retiring is a far cry from being motivated by "inaccurate and stigmatizing stereotypes." In this context, statements about average age do not amount to direct evidence of discrimination. And while such statements might be suspicious enough to make out a prima facie case of discrimination, as we discuss below Lockheed offered overwhelming evidence that Rowan and Washington were selected from among their peers for entirely legitimate reasons, and the plaintiffs fail to show that such evidence is just a pretext.

Seeing the average-age statements in their proper context of critical technological skills disposes of most of the plaintiffs' evidence, since most of the statements alleged by the plaintiffs were of this sort. For example, the allegations against Van Hook (the president of Lockheed) and Gustavson (an executive vice-president) only include such average-age statements, and the plaintiffs do not even allege that Van Hook and Gustavson were involved in the selection of the plaintiffs for termination anyway. By the same reasoning we can also rule out one statement made by Eaton, their immediate supervisor, and all but one statement by Stone, another superior of the plaintiffs, whom they do allege was involved in their termination decision.[1]

The plaintiffs also allege that Stone and Powell once commented on a golf course in 1992 that "the older people should go, bring in some new blood so that they will understand the compliance findings." While the content of this statement cannot be dismissed as a legitimate concern about the possibility of retirements, one stray statement allegedly made seven years before the adverse decisions obviously cannot count as direct evidence of unlawful age-bias in those decisions, especially when the statement is as tame as this one. And we agree with the district court that even taking this evidence as true it could not support a jury

---

[1] We point out in passing that the district court was too quick to conclude that Stone was not a decision-maker. Although that might be the most reasonable inference after a trial, for the purposes of summary judgment the facts and inferences must be interpreted in the light most favorable to the non-moving party, in this case the plaintiffs. Powell's alleged statement that "between us [i.e., Stone and Powell] we certainly made the decisions" could lead a reasonable jury to conclude that Stone was involved in the decision-making process with Powell. In the end, this error does not matter, since as we explain herein none of the statements allegedly made by Stone constitute direct evidence of unlawful discrimination or are sufficient grounds for a finding that the lawful reasons offered by Lockheed are a sham and a pretext.

finding that the legitimate reasons offered by the defendant were a pretext masking unlawful discrimination.

The defendant offers overwhelming evidence that the decision to discharge the plaintiffs specifically was not a pretext for age discrimination, much of which was detailed by the district court. For example, the 44-year-old Seeber, who with Rowan held one of two "less technical" air permit engineering positions, was retained over Rowan even though they both performed air permitting support work. But Seeber had longer company service than Rowan (25 years to 21 years) and more time in position (9 years to 8 years). More importantly, Seeber had been responsible for more sophisticated work. For example, for years Seeber had provided air permit support to the Enriched Uranium Operations processing facility, the most complicated area of the Y-12 plant, and an area in the midst of a crucial "resumption program." Seeber's experience and expertise clearly exceeded Rowan's, and were needed in order for the plant to negotiate a Title V permit for the Enriched Uranium Operations. Similarly, Lockeed cites numerous legitimate reasons for discharging Washington instead of his co-workers Skinner and Cunningham. Washington's technical support position was being eliminated, and both Skinner and Cunningham consistently received higher performance evaluations than Washington while doing more complex work. Washington spent most of his time performing activities unrelated to the Clean Air program. By contrast, Skinner was the Title V permitting lead, and Cunningham was the coordinator of a program which involved radiological monitoring using unique regulations.

The plaintiffs allege that they had other qualifications that Lockheed should have considered. In order to prove discrimination, though, the plaintiffs must directly confront the asserted justification for the discharge. *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 148 (2000); *Gagne v. Northwestern Nat. Ins. Co.*, 881 F.2d 309,

314 (6th Cir. 1989). The plaintiffs may not simply substitute their own business judgment for that of the defendant. Rather, to survive a summary judgment motion they must show that a reasonable jury could conclude that the actual reasons offered by the defendant were a mere pretext for unlawful age-discrimination, not that other reasonable decision-makers might have retained the plaintiffs. In this case no reasonable jury could reach that conclusion.

Finally, the plaintiffs allege that Eaton, their immediate supervisor, called them "old farts" on a "fairly regular basis." Unlike the statements about the average age in the plant, using such age-based slurs may well betray a bias that older workers are less valuable or competent. However, such statements will not constitute direct evidence. Since the plaintiffs do not allege that they were made in relation to the decision to discharge the plaintiffs as part of the reduction in force, an inference is required that such a bias may have played a role in the decision to select these plaintiffs. In fact, the evidence does not support the conclusion that Eaton was a decision-maker in connection with the discharges in the first place, and therefore whatever statements he made are irrelevant anyway. "'[S]tatements by non-decision makers, or statements by decision makers unrelated to the decisional process itself [can not] suffice to satisfy the plaintiff's burden' of demonstrating animus." *Bush v. Dictaphone Corp.*, 161 F.3d 363, 369 (6th Cir. 1998) (quoting *Price Waterhouse v. Hopkins*, 490 U.S. 228, 277 (1989)).

Although Eaton was not involved in the decision to select Rowan and Washington for termination, the plaintiffs argue that he was involved in the decision not to transfer them to other jobs within the plant that were filled with younger workers. As evidence for this proposition they cite a "smoking gun" memo dated October 7th, 1999 from Eaton to Powell in which Eaton writes, "How about you and I get together the week of 10/25 to discuss assignment changes in prep for 11/12." The plaintiffs argue that this memo

demonstrates that Eaton was involved in transfer decisions related to the November 12th layoff. In fact, the memo shows nothing of the sort. The October memo does not show that Eaton was involved in the decision to terminate the plaintiffs, as that decision had already been finalized in August. Nor does it show that Eaton was involved in the decision not to transfer the plaintiffs. For one thing, "assignment changes" are not the same thing as transfers. More importantly, the transfers in question were not even being discussed at the time of this memo. The specific jobs that the plaintiffs claim they should have been transferred to were filled either well before the reduction in force (the jobs filled by Fields and Owens), or well after the plaintiffs had left the payroll (the reassignments of Cunningham, Evans, Duke and Beck). The latter transfers were related to each other, and were set off by a chain of events occurring between January and May of 2000, months after the plaintiffs' positions had already been eliminated, and months after the memo by Eaton that plaintiffs speciously call a "smoking gun." In short, the plaintiffs fail to tie Eaton's alleged age-bias to any adverse decision affecting them.

For all the reasons articulated above, the judgment of the district court is AFFIRMED.

_____

**CONCURRENCE**

_____

FEIKENS, District Judge.

I concur with the result that the Court reaches in this case.

I write separately to state that I fully agree with the Court's statement that the evidence in this case "indicates that the concern for the average age of the work force in the plant was entirely motivated by the findings of the Chiles Commission..." I conclude from this that the statements related to the average age of the work force are not suspicious and therefore do not make out a prima facie case of discrimination. Therefore, I would affirm the District Court on its conclusion in this regard.