Connie **FERRETTE**, Plaintiff–Appellant,

v.

**CUYAHOGA COUNTY BOARD OF ELECTIONS**, Defendant–Appellee.

No. 03–3515.

United States Court of Appeals, Sixth Circuit.

July 13, 2004.

Leonard W. Yelsky, Yelsky & Lonardo, Cleveland, OH, for Plaintiff–Appellant.

Carmen Naso, Office of the Prosecuting Attorney, Reno J. Oradini, Steven W. Ritz, Asst. Pros. Attorney, Cuyahoga County Prosecutor's Office, Cleveland, OH, for Defendant–Appellee.

Before: BOGGS, Chief Judge, and DAVID A. NELSON and SUTTON, Circuit Judges.

DAVID A. NELSON, Circuit Judge.

The Board of Elections of Cuyahoga County, Ohio, cut its staff by approximately 18 percent in August of 2000. Among the employees who lost their jobs was the plaintiff herein, a 64–year–old woman who had recently returned to work after successful treatment for cancer. She brought suit against the Board, alleging age, sex, and disability discrimination. She also claimed that the Board had acted in violation of Ohio public policy.

The district court entered summary judgment in favor of the Board. Upon de novo review we conclude that the judgment should be affirmed.

I

The plaintiff, Connie Ferrette, had worked at the Board for approximately 15 years. In her last two years she had been a senior clerk in the voting locations/inspection department.

Beginning in March of 2000 the Board underwent a substantial reorganization and reduction in force. All employees were placed on "temporary employment status" and were required to reapply for their positions.

In April of 2000 Ms. Ferrette was diagnosed with cancer of the mouth. She reapplied for her senior clerk position while she was off work undergoing treatment.

Free of cancer by August 7, 2000, Ms. Ferrette returned to work on that date. (She worked less than a full day, however.)

On August 11, 2000, the Board notified Ms. Ferrette that she had not been reappointed as a senior clerk. Counting Ms. Ferrette, 23 of the Board's 129 employees lost their jobs in the workforce reduction.

David Hughes,[1] a 26–year–old man who had worked in the voting locations/inspection department for about a year, was appointed to a senior clerk position the duties of which had been changed since Ms. Ferrette held the job. Three other men, all of whom were over 50 years of age and one of whom was over 70, were also appointed to senior clerk positions.

In September of 2000 Ms. Ferrette filed an administrative charge of age and disability discrimination. Although she stated in an accompanying affidavit that "the males do not want women in the department," she did not allege that she was discharged because of her sex.

After receiving a right-to-sue letter, Ms. Ferrette filed this action in federal district court. She alleged that the Board's termination of her employment violated both state and federal law, the Board allegedly having discriminated against her on the basis of age, sex, and disability. She further alleged that her termination violated Ohio public policy.

After the Board moved for summary judgment, the district court entered judgment for the Board on the merits of all of Ms. Ferrette's discrimination claims with

---

1. At oral argument counsel could not confirm or deny a suggestion in the record that Mr.

Hughes is the grandson of the late Robert Hughes, a longtime member of the Board.

the exception of her federal claim of sex discrimination. That claim was dismissed for lack of jurisdiction. The court declined to exercise jurisdiction over Ms. Ferrette's public-policy claim, thereby bringing the federal case to a conclusion. Ms. Ferrette perfected a timely appeal.

## II

Absent direct evidence of discriminatory animus, Ms. Ferrette was obliged to establish a prima facie case of age, sex, or disability discrimination under the framework set forth in *McDonnell Douglas v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973).[2]

Under *McDonnell Douglas*, a plaintiff who alleges discriminatory discharge on the basis of age or sex must show (1) that he is a member of a protected group; (2) that he was discharged; (3) that he was qualified for his position; and (4) that he was replaced by a person from outside the protected group. See, *e.g., Rowan v. Lockheed Martin Energy Systems, Inc.*, 360 F.3d 544, 547 (6th Cir.2004). Where there has been a reduction in force, however, "the fourth prong is modified so that the plaintiff[ ] must provide 'additional direct, circumstantial, or statistical evidence tending to indicate that the employer singled out the plaintiff for discharge for impermissible reasons.'" *Id.* (quoting *Ercegovich v. Goodyear Tire & Rubber Co.*, 154 F.3d 344, 350 (6th Cir.1998)).

A plaintiff who alleges that he was discharged because of a disability must show (1) that he was disabled, (2) that he was discharged, (3) that he was qualified for his position, with or without accommodation, (4) that his employer knew or had reason to know of his disability, and (5) that he was replaced or that his position remained open while the employer sought a replacement. See, *e.g., Plant v. Morton International, Inc.*, 212 F.3d 929, 936 (6th Cir. 2000).

Under either variation of the *McDonnell Douglas* analysis, the defendant can rebut a prima facie case of discrimination by producing evidence of a legitimate, non-discriminatory reason for the discharge. The plaintiff must then produce evidence from which a jury could conclude that the defendant's stated reason was a pretext for unlawful discrimination. See, *e.g., Rowan*, 360 F.3d at 547; *Plant*, 212 F.3d at 936.

■ It is apparent that Ms. Ferrette cannot prevail on any of her discrimination claims absent evidence that she was qualified for the position she lost in August of 2000. In our view, Ms. Ferrette failed to adduce such evidence.

A 1994 performance evaluation and letters written by former supervisors and co-workers suggest that Ms. Ferrette performed well during much of her 15-year tenure at the Board. Most of this evidence is irrelevant, however, to the question of her qualifications to do the job of senior clerk in the summer of 2000. The uncontroverted evidence as to Ms. Ferrette's performance since becoming a senior clerk in March of 1998 demonstrates that she failed to acquire the computer

---

**2.** Ms. Ferrette has not challenged the district court's conclusion that it lacked jurisdiction over her federal claim of sex discrimination, that claim not having been raised in the charging document filed at the administrative level. The complaint filed in district court alleges sex discrimination under Ohio law as well as federal law, however, and the merits of the state-law claim are properly before us.

Claims of age, sex, and disability discrimination brought under Ohio law are subject to the same analysis as corresponding claims brought under federal law. See, *e.g., Cline v. Catholic Diocese of Toledo*, 206 F.3d 651, 668 (6th Cir.2000); *Martin v. Barnesville Exempted Village School District*, 209 F.3d 931, 934 n. 2 (6th Cir.), *cert. denied*, 531 U.S. 992, 121 S.Ct. 482, 148 L.Ed.2d 456 (2000).

skills needed to perform that job at an acceptable level.

Beginning in December of 1998, Ms. Ferrette's supervisor documented her failure to "become computer literate" despite substantial instruction on computer use. This supervisor noted in a memo to the Board's human resources administrator that Ms. Ferrette was not completing tasks assigned to her, such as keeping computer records current, and was "prone to making errors." In January of 2000 a new supervisor wrote to the Board's elections coordinator that Ms. Ferrette did not have the computer skills necessary for keeping accurate records and had to be assisted in preparing telephone orders for the March 2000 primary. This supervisor recommended that Ms. Ferrette "go through an extensive computer training program" after the election, "starting with an Introduction to Computer Class."

Ms. Ferrette submitted evidence that a representative of the Board's telecommunications vendor believed she had done an "excellent" job of coordinating telephone service for voting locations in the March 2000 primary. But the opinion of an outside vendor, who could not have known what the Board required of Ms. Ferrette or whether she was able to fulfill those requirements without assistance, cannot overcome the evidence that Ms. Ferrette's supervisors found her lacking the necessary computer skills. Neither the vendor's opinion nor any of the other evidence presented by Ms. Ferrette demonstrates that she possessed all of the qualifications for the senior clerk position in 2000.[3]

■ Ms. Ferrette failed to offer other evidence necessary to make out a prima facie case of discrimination, such as evidence that she was singled out for discharge because of her age or sex. There is no direct evidence that age or sex played a role in the Board's personnel decisions. Nor is there sufficient circumstantial evidence, in our view, to support a finding of improper discrimination. The ages of the senior clerks retained in the voting locations/inspection department do not suggest that the Board favored younger workers: three out of the four retained, as we have said, were over 50, and one of them was over 70. All were males, to be sure, but the Board's reduction in force was not limited to the locations/inspection department—and there is no evidence that female workers were disproportionately affected by the workforce reduction as a whole. Nor is there evidence that the retained male clerks were similarly situated to Ms. Ferrette insofar as their job qualifications were concerned.

---

**3.** Our conclusion on the issue of qualification is based on the record with respect to Ms. Ferrette's computer skills and not on her supervisors' subjective dissatisfaction with her performance. In *Wexler v. White's Furniture, Inc.*, 317 F.3d 564, 575–76 (6th Cir.2003) (en banc), we held that the employer's satisfaction with an employee's performance is not what determines whether the employee is qualified.

"At the prima facie stage, a court should focus on a plaintiff's *objective* qualifications to determine whether he or she is qualified for the relevant job. The prima facie burden of showing that a plaintiff is qualified can therefore be met by presenting credible evidence that his or her qualifications are at least equivalent to the minimum objective criteria required for employment in the relevant field. Although the specific qualifications will vary depending on the job in question, the inquiry should focus on criteria such as the plaintiff's education, experience in the relevant industry, and demonstrated possession of the required general skills." *Wexler,* 317 F.3d at 575–76 (citations omitted).

We believe that the evidence presented by the Board demonstrates that Ms. Ferrette lacked an objective qualification for the senior clerk job—*i.e.,* computer literacy.

Ms. Ferrette contends that she did not need to present the additional evidence of discrimination required in reduction-in-force cases because she was in fact replaced by another worker, David Hughes. We have held that "[a]n employee is not eliminated as part of a work force reduction when he or she is replaced after his or her discharge." *Barnes v. GenCorp, Inc.,* 896 F.2d 1457, 1465 (6th Cir.), *cert. denied,* 498 U.S. 878, 111 S.Ct. 211, 112 L.Ed.2d 171 (1990). There is evidence that Mr. Hughes received the "slot" that had been Ms. Ferrette's before she, along with all other Board employees, was placed on "temporary employment status." But the Board's elections coordinator testified that the Board had "changed the job duties of the position" to which it appointed Mr. Hughes: "It was still titled a senior clerk, but we added more duties to that." This evidence was not contradicted. Because Hughes' duties were not the same as Ms. Ferrette's, we do not think it can be said that he replaced her. See *id.*

As for Ms. Ferrette's disability claims, she has not demonstrated that she was disabled in August of 2000. Under the Americans with Disabilities Act, a "disability" is an impairment that "substantially limits one or more … major life activities." 42 U.S.C. § 12102(2). Ms. Ferrette contends that she was unable to perform the major life activity of speaking as a result of surgery for her cancer. By her own admission, however, she had regained the ability to speak by early August, and there is no evidence that she could not speak at the time her employment was terminated.

Ms. Ferrette also points to an affidavit in which her doctor stated that she was not able to work in August of 2000. But contrary to that affidavit, which is the only medical documentation produced by Ms. Ferrette, she in fact returned to work on August 7, 2000.

Finally, even if Ms. Ferrette had established a prima facie case of discrimination under the first part of the *McDonnell Douglas* analysis, we would hold that summary judgment was properly granted to the Board. The Board presented a legitimate, non-discriminatory reason for Ms. Ferrette's discharge—its 18 percent reduction in force. Ms. Ferrette has not presented evidence from which a jury could find the stated reason to be a pretext.

### III

Ms. Ferrette argues that the district court should not have declined to exercise jurisdiction over her state-law public-policy claim. The district court's decision in this regard is reviewed for abuse of discretion. See, *e.g., Habich v. Dearborn,* 331 F.3d 524, 535 (6th Cir.2003).

Whether a district court should decide a pendent state-law claim after dismissing all claims over which it had original jurisdiction depends on a balancing of factors that include "judicial economy, convenience, fairness, and comity." *Carnegie–Mellon University v. Cohill,* 484 U.S. 343, 350, 108 S.Ct. 614, 98 L.Ed.2d 720 (1988). As a general rule, these factors "will point toward declining to exercise jurisdiction over the remaining state-law claims" if "all federal-law claims are eliminated before trial." *Id.* n. 7 (discussing *United Mine Workers v. Gibbs,* 383 U.S. 715, 726, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966)). We see nothing in the case at bar that would compel a departure from the usual rule. There was no abuse of discretion here.

**AFFIRMED.**