NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 07a0075n.06
Filed: January 31, 2007

No. 06-3111

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

MICHAEL RUFO,                                    )
                                                 )
    **Plaintiff-Appellant,**                    )          **ON APPEAL** FROM THE
                                                 )          UNITED STATES DISTRICT
v.                                               )          COURT FOR THE SOUTHERN
                                                 )          DISTRICT OF OHIO
DAVE & BUSTERS, INC.,                            )
                                                 )          **O P I N I O N**
    **Defendant-Appellee.**                    )
_____          )

**Before:  MOORE and ROGERS, Circuit Judges; GIBSON,*** Senior Circuit Judge.

**KAREN NELSON MOORE, Circuit Judge.**  In this case, a restaurant's assistant general manager sued his former employer for refusing to promote him to general manager, alleging age discrimination and retaliation in violation of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. §§ 623-34, and related provisions of the Ohio Revised Code.  The district court granted the employer's summary judgment motion.  Because the plaintiff fails to challenge the employer's assertion that his violation of company policies amounted to poor performance rendering him unfit for promotion, he has not met his burden of establishing pretext.  Accordingly, his discriminatory failure-to-promote claims fail.  Similarly, the plaintiff does not challenge the employer's

---

*The Honorable John R. Gibson, Circuit Judge of the United States Court of Appeals for the Eighth Circuit, sitting by designation.

nondiscriminatory reasons for changes in his working conditions, and accordingly cannot establish pretext for his retaliation claims. We accordingly **AFFIRM** the district court's judgment.

## I. FACTUAL AND PROCEDURAL BACKGROUND

### A. Relevant Factual Background

Dave & Buster's, Inc. ("D&B") operates a chain of stores containing restaurants, bars, and video arcades. In April 2002, D&B hired Mike Rufo, who was 51 years old at the time, as a Manager-in-Training in its Cincinnati store. Within a year, Rufo received two promotions and became the Assistant General Manager ("AGM") of the Cincinnati store.

Derek Robinson worked as the General Manager ("GM") of the Cincinnati store and was Rufo's immediate supervisor. When Rufo was first hired, Brock Anderson worked as the Regional Operations Director ("ROD"), and was Robinson's immediate supervisor. Sometime in 2003, Bernard Carpenter replaced Anderson as the ROD whose territory included the Cincinnati store. Although Rufo's relationship with Anderson was solid, neither Rufo nor Robinson got along very well with Carpenter.

Robinson was responsible for evaluating Rufo about every six months. Generally speaking, Rufo's evaluations reflected substantial praise from Robinson. Rufo's numerical scores were above average, and the comments he received from Robinson were positive, although Robinson frequently urged Rufo to demonstrate more leadership and to show more initiative.

After Robinson's tensions with Carpenter came to a head, Robinson resigned around April 2004. Before leaving, Robinson told Rufo that Robinson had received instructions from Carpenter to terminate Rufo. According to Robinson, these instructions came during Carpenter's first visit to the Cincinnati store, when Carpenter saw Rufo from across the store, and before Carpenter had ever

2

met Rufo. When Robinson refused to fire Rufo, Carpenter threatened to fire Robinson. Additionally, Robinson told Rufo that Carpenter had recounted to Robinson a statement by D&B founder Buster Corley, who was also D&B's CEO and COO, that the company had hired too many "managers who were on the back side of their career[s], who were no longer productive, and that they needed to go away." Joint Appendix ("J.A.") at 357.

Shortly after receiving this news and at the suggestion of an interim GM, Rufo filed an internal complaint indicating that he believed that D&B may have been holding him back because of his age. D&B responded to the complaint with a letter dated May 11, 2004, indicating that it is D&B's policy not to discriminate on the basis of age.

In May 2004, D&B hired Scott Ellinger, who was only 34 years old, to be the GM of the Cincinnati store, and accordingly, Rufo's immediate supervisor. With Ellinger running the store, Rufo's responsibilities changed. For example, sometimes Rufo's schedule required him to work under people he had previously supervised. Some managerial responsibilities (including scheduling, meeting with line managers, setting and tracking goals, and sales forecasts) were taken away from Rufo. Additionally, Rufo was (on at least one occasion) required to close the store one night and return the next morning to open, which gave him only five hours between shifts. Rufo perceived these changes as a slight, and around July 11, 2004, he resigned.

## B. Procedural History

On October 8, 2004, Rufo filed suit against D&B in the U.S. District Court for the Southern District of Ohio. Rufo's complaint asserted five counts against D&B: age discrimination under 29 U.S.C. § 623(a) and Ohio Revised Code §§ 4112.14 and 4112.99 (Counts I and III), retaliation under 29 U.S.C. § 623(d) and Ohio Revised Code § 4112.02(I) (Counts II and IV), and wrongful

3

termination in contravention of public policy (Count V). After discovery, D&B moved for summary judgment, which the district court granted on December 16, 2005. In its opinion, the district court noted that Rufo expressly withdrew his claim for wrongful termination. The district court further noted that Rufo opposed D&B's motion for summary judgment on the discrimination claims only insofar as they alleged that the act of discrimination was D&B's failure to promote him (as opposed to the constructive discharge alleged in Rufo's complaint).

The same day it issued its summary judgment opinion, the district court entered judgment. On January 13, 2006, Rufo timely filed his notice of appeal.

## II. ANALYSIS

### A. Jurisdiction and Standard of Review

The district court had jurisdiction over Rufo's federal claims under its federal-question jurisdiction, 28 U.S.C. § 1331, and exercised supplemental jurisdiction under 28 U.S.C. § 1367(a) over Rufo's state-law claims. We have jurisdiction over Rufo's appeal from the district court's final judgment under 28 U.S.C. § 1291.

We review de novo a district court's order granting summary judgment, *DiCarlo v. Potter*, 358 F.3d 408, 414 (6th Cir. 2004), and will affirm a grant of summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). In reviewing the district court's decision to grant summary judgment, we must view all evidence in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

4

**B. Age-Discrimination Claims**

Because Rufo does not press the theory that he was constructively discharged from D&B, we consider only the failure-to-promote aspect of his age-discrimination claims. Also, we need not analyze separately Rufo's state-law claim because "[u]nder Ohio law, the elements and burden of proof in a state age-discrimination claim parallel the ADEA analysis." *Ercegovich v. Goodyear Tire & Rubber Co.*, 154 F.3d 344, 357 (6th Cir. 1998).

**1. Framework of Analysis**

When an age-discrimination plaintiff grounds his case on circumstantial evidence,[1] we apply the burden-shifting framework first set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973). *Rowan v. Lockheed Martin Energy Sys., Inc.*, 360 F.3d 544, 547 (6th Cir. 2004). To survive summary judgment, the plaintiff must first offer sufficient evidence to permit a jury to find each of the following elements of a prima facie case of age discrimination: (1) the plaintiff was a member of a protected age class (i.e., at least forty years old); (2) the plaintiff suffered an adverse employment decision; (3) the plaintiff was qualified for the job or promotion; and (4) the employer gave the job or promotion to a younger employee. *See id.* Failure to promote may constitute an adverse employment decision. *See Grizzell v. City of Columbus Div. of Police*, 461 F.3d 711, 719 (6th Cir. 2006) (race-discrimination case).

---

[1]We reject Rufo's argument that his claim is premised on direct evidence. Each of the statements upon which he seeks to premise that argument requires an inference to lead to the conclusion that he was refused a promotion because of his age. Because direct evidence consists of "evidence that proves the existence of a fact without requiring any inferences," *Rowan v. Lockheed Martin Energy Sys., Inc.*, 360 F.3d 544, 548 (6th Cir. 2004), these statements are not direct evidence of age discrimination.

Once the plaintiff establishes a prima facie case, the employer bears the burden of articulating a legitimate, nondiscriminatory reason for the adverse employment decision. *Weigel v. Baptist Hosp. of E. Tenn.*, 302 F.3d 367, 377 (6th Cir. 2002). At this stage and throughout, the burden of persuasion remains with the plaintiff. *Id.* at 377-78 (citing *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253 (1981)). Finally, the burden switches back to the plaintiff to identify admissible evidence sufficient to create a genuine issue of material fact as to whether the employer's proffered reasons are pretextual. *Id.* at 378.

### 2. Prima Facie Case

For purposes of this analysis, we assume *arguendo* that Rufo has established a prima facie case of discrimination.

### 3. D&B's Legitimate Nondiscriminatory Reasons

D&B offers two reasons for its failure to advance Rufo. First, it argues that Rufo exhibited poor judgment unbecoming of a GM when he told "wild stories" regarding alien abduction, a former career as a pimp, and mailing babies overseas. Next, it claims that Rufo's job performance was not adequate, in that Rufo repeatedly failed properly to assert his leadership, and also that he violated the company's rules and policies in various ways.

### 4. Pretext

Because D&B stated nondiscriminatory reasons for its decision, Rufo must ultimately establish by a preponderance of the evidence that D&B's proffered reasons are a pretext used to cover up age discrimination if he is to win his case. To win this appeal, Rufo must point to admissible evidence sufficient to create a genuine issue of material fact as to whether D&B's proffered reasons are a pretext for age discrimination. *See Rowan*, 360 F.3d at 550.

6

We have identified three methods through which a plaintiff may demonstrate pretext. More specifically, the plaintiff must make a showing that the employer's proffered reasons (1) lack a basis in fact; (2) did not actually motivate the employer's failure to promote; or (3) are insufficient to motivate the employer's failure to promote. *Manzer v. Diamond Shamrock Chems. Co.*, 29 F.3d 1078, 1084 (6th Cir. 1994).

As noted above, D&B offers two reasons for refusing to promote Rufo: poor judgment and poor performance.

### a. Rufo's Alleged Poor Judgment

Although we believe that a genuine issue of material fact exists as to whether this asserted reason was pretextual,[2] this conclusion does not warrant reversing the district court's judgment because D&B offered another reason for refusing to promote Rufo.

### b. Rufo's Alleged Poor Performance

D&B's other proffered legitimate nondiscriminatory reason for not promoting Rufo is that Rufo's job performance was not sufficiently outstanding to merit a promotion. One of D&B's bases for its assertion that Rufo's "poor performance" motivated D&B to deny Rufo a promotion is Rufo's failure to follow company policies. As specific examples, it maintains that Rufo gave shots of Tabasco sauce to employees who came in late on Sunday mornings, allowed employees to leave their

---

[2]This belief is based upon deposition testimony and Rufo's evaluations. Robinson testified that Rufo's storytelling "didn't seem like it was something that we were overly concerned with" and did not hold Rufo back from a promotion. J.A. at 349 (Robinson Dep. at 32-33). Rufo testified that he told bizarre stories to get a laugh and to boost morale, and he explained that the "alien abduction" story began with a makeshift Halloween costume and became a running joke among other employees. He offered similar explanations for the "pimping" and "baby mailing" stories. J.A. at 265 (Rufo Dep. at 106-09). Most tellingly, Rufo's evaluations contain no indication that anyone was concerned that his unusual stories exhibited poor judgment. To the contrary, the evaluations' only comments regarding his judgment are positive.

shifts early, failed to enforce D&B's ban on carrying cell phones into the restaurant, and failed to report an allegation of sexual harassment to Robinson.

Rufo offers no evidence to call into question the veracity of these allegations and no arguments for why they are not legitimate reasons to deny him a promotion. By effectively conceding that these actions qualify as "poor performance" and also failing to provide evidence that this allegedly poor performance did not actually motivate D&B to refuse to promote him, Rufo fails to carry his burden under the ADEA's burden-shifting framework. For this reason, we **AFFIRM** the district court's judgment for D&B on Rufo's age-discrimination claims.

## C. Retaliation Claims

Rufo also asserts claims for retaliation in violation of federal and Ohio law. Because Ohio standards for retaliation mirror the federal standards, we analyze both the federal and state-law retaliation claims together. *See Pflanz v. City of Cincinnati*, 778 N.E.2d 1073, 1089 (Ohio Ct. App. 2002) (disability discrimination and retaliation); *Baker v. The Buschman Co.*, 713 N.E.2d 487, 491 (Ohio Ct. App. 1998) (race discrimination and retaliation).

### 1. Framework

Like claims of age discrimination, ADEA claims for retaliation follow a burden-shifting framework. More specifically, a plaintiff can establish a prima facie case by showing: "(1) that the plaintiff engaged in a protected activity; (2) that the defendant had knowledge of the plaintiff's protected conduct; (3) that the defendant took an adverse employment action towards the plaintiff; and (4) that there was a causal connection between the protected activity and the adverse employment action." *Weigel*, 302 F.3d at 381. If the plaintiff establishes a prima facie case, the burden switches to the employer to articulate a legitimate nondiscriminatory reason for its action,

8

and then back to the plaintiff to establish by a preponderance of the evidence that the employer's proffered reasons are pretextual. *See id*.

### 2. Analysis

Rufo asserts that his internal complaint constitutes protected activity, satisfying the first two elements of the prima facie case. He identifies as the adverse employment action a drastic change in employment conditions, including adverse scheduling and a diminution in responsibilities that amount to a de facto demotion. Finally, he asserts that D&B undertook to change the conditions of his employment in response to his internal complaint.

Assuming *arguendo* that Rufo can establish a prima facie case of retaliation, his claim still fails. In deposition, Ellinger testified that the reassignments and scheduling changes of which Rufo complains were for legitimate business reasons. Ellinger explained that company policy requires the GM to create the managers' schedules, so he took that task away from Rufo. Ellinger took over financial projections because he felt it was important for him to know the details of the store and its business, and because of concerns with Rufo's performance. Ellinger further explained that he occasionally requires managers to work in other stations, sometimes in positions that require them to work for some of their subordinates, to increase flexibility by ensuring that managers would be able to cover different stations if the restaurant were ever short on help. Finally, Ellinger testified that he scheduled managers for back-to-back shifts only when necessary and that the store's other AGMs worked those shifts, as well as Rufo.

Rufo offers no evidence in response to these nondiscriminatory reasons, and therefore cannot carry his burden of showing that they have no basis in fact, that they did not actually motivate the changes in job conditions, or that they were insufficient to cause the changes. Because Rufo cannot

9

establish a genuine issue of material fact regarding pretext, we **AFFIRM** the district court's grant of summary judgment on Rufo's retaliation claims.

### III.  CONCLUSION

For the foregoing reasons, we **AFFIRM** the district court's grant of summary judgment on Rufo's age-discrimination claims and on his retaliation claims.