NOT RECOMMENDED FOR PUBLICATION
File Name: 24a0190n.06

Case No. 23-1717

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

<table>
<tr><td>

JOY SAMPSON,

    Plaintiff - Appellant,

v.

FLEX N GATE NINE MILE, LLC; FLEX
N GATE ROYAL OAK, LLC; FLEX N
GATE, LLC; FLEX N GATE, MICHIGAN,

    Defendants - Appellees.

</td><td>

)
)
)
)
)
)
)
)
)
)
)
)

</td><td>

**FILED**

Apr 30, 2024

KELLY L. STEPHENS, Clerk

ON APPEAL FROM THE UNITED
STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF MICHIGAN

OPINION

</td></tr>
</table>

Before: GIBBONS, BUSH, and LARSEN, Circuit Judges.

JULIA SMITH GIBBONS, Circuit Judge. Joy Sampson, the Materials Manager for Flex N Gate Nine Mile, LLC ("Nine Mile"), was terminated after her Plant Manager, Anthony Spalding, implemented a reduction in force for salaried employees at the plant. After she was let go, her job duties were absorbed by a younger male employee, Jeff Wisnewski, who worked both as the facility's Customer Service Manager and as a production scheduler under Sampson. Sampson argues that Nine Mile, and other Flex N Gate entities, discriminated against her on the basis of sex when it terminated her, replaced her with Wisnewski, and failed to rehire her in another position. Flex N Gate maintains that its decision to terminate Sampson stemmed from its need to cut costs, resulting in its reduction in force. After reviewing the record, we affirm the district court's grant of summary judgment for the Flex N Gate entities.

I.

Flex N Gate is an automotive parts manufacturing business with several industrial plants, like Nine Mile, spread across the Midwest. Joy Sampson first joined Nine Mile as a Shipping and Receiving Coordinator in 2003 and was later promoted to Materials Manager in 2012. In that capacity, Sampson oversaw the Materials Department's employees and bore responsibility for the Department's "materials scheduling, customer service, shipping, receiving, distribution, supply chain management and production scheduling." DE 31-7, Job Description, PageID 449. Sampson, along with the other managers at Nine Mile, reported directly to the Plant Manager.

In 2015, Anthony Spalding became the Plant Manager at Nine Mile. Spalding took issue with Sampson's performance soon after. In her end-of-year performance evaluation, for example, Spalding remarked that Sampson's overall performance needed improvement and highlighted customer focus, depth of knowledge, decision making, and reliability as areas for improvement. Spalding further noted that Sampson consistently erred in her work product, caused needless inefficiencies, and that she tended to become frustrated easily. Sampson refused to sign the performance review or acknowledge receipt.

Spalding expressed his concerns and frustrations with Sampson to his supervisor, stressing that, after attempting to alleviate these performance issues, he "ha[d] come to the conclusion that [Sampson] is not a good fit for the 9 Mile Plant." DE 30-7, Spalding Dep. Ex., PageID 335. He also hired Jeff Wisnewski as a shipping supervisor in the Materials Department to assume responsibility for production scheduling in an effort to mitigate Sampson's potential mistakes.

Over the next few months, Spalding documented several additional instances of Sampson's poor performance. These events ranged from Sampson's disrespectful behavior towards customers to her failure to timely communicate with Nine Mile employees, resulting in losses and

delay. Spalding then placed Sampson on a performance improvement plan in May 2016. The plan listed five areas for improvement: communication, accuracy, respect towards others, accountability, and awareness in the workplace; it also established benchmarks to measure Sampson's adherence to the plan over the next ninety days. Sampson submitted a written response to the plan, disagreeing with its factual basis and criticizing Spalding's transparency in operating the plant. Despite this protest, she successfully completed the plan; and, in her end-of-year review, Spalding indicated that her performance met expectations.

Sampson continued to perform her duties without issue for the next year, but abruptly resigned from Nine Mile following an August 2017 meeting. That meeting was attended by Spalding; the Nine Mile managers that reported to him (like Sampson); and Pierre Taouil, Flex N Gate's Director of Manufacturing. Sampson recounted that while Taouil "pretty much yelled at everyone" in the meeting, she felt that "more anger and resentment was aimed at [her] than [her] counterpoints." DE 30-6, Sampson Dep., PageID 189–90. At some point during the meeting, Taouil put his finger in Sampson's face and told her, "[y]ou're going to answer my questions with a yes or no," to which Sampson responded "[o]kay" and later walked out of the meeting and resigned her position. *Id.* at PageID 189. Although Taouil's behavior was the catalyst for her resignation, Sampson attested that this type of behavior was not uncommon at Nine Mile. She stated that Spalding treated her different than the male managers by yelling at her, belittling her, and allowing the male managers to talk over her during meetings.

A few months later, Taouil and Spalding reached out to Sampson and asked her to return to Nine Mile. She accepted their offer and joined Nine Mile in March 2018 as a Materials Coordinator. And, after a month in that role, she was elevated to Materials Manger, the position

she held before her exit.[1] Sampson described her working relationship with Spalding on return as more or less the same. That is, although Spalding was "more distant" and no longer yelled at her, he still treated her differently from the male managers; for example, he excluded her from manager meetings. At her end-of-year performance review Spalding rated Sampson as a "Solid Performer," but stressed that Sampson still had areas for improvement, like needing to improve the accuracy of the Material Department's inventory.

In the Spring of 2019, Spalding created a Reduction in Force ("RIF") plan to reduce the number of salaried employees at Nine Mile. These cuts were proposed both because Flex N Gate expected its sales to drop in the coming year and because Nine Mile recently completed a product launch, leaving it with more employees than needed as production was further streamlined. Spalding proposed cutting five positions: Materials Manager, Sampson's position; Process Tech, which was vacant at the time; as well as Automation Engineer, Shift Leader, and Quality Control Liaison, each held by a male employee. He also provided explanations for these cuts. For example, Spalding suggested using an existing employee to cover the duties of the vacant Process Tech, eliminating the Shift Leader position entirely, and yielding the responsibilities of the Materials Manager position to Wisniewski. These proposed cuts would save Nine Mile nearly $300,000 a year.

Although this RIF was designed in May, Nine Mile did not implement the plan for several months. In that time, the Automation Engineer quit and the Quality Control Liaison transferred to

---

[1] Another individual, Amy Tonnis, held the Materials Manger position when Sampson returned to Nine Mile. Spalding and Taouil expressed to Sampson that Amy planned on leaving the position soon, after an upcoming product launch, and that Sampson would be elevated to that position afterwards.

another Flex N Gate facility. Nine Mile proceeded to terminate the Shift Leader and Sampson on August 30 and September 3, respectively.[2]

After Sampson's termination, Wisniewski absorbed her responsibilities as Materials Manager. Although he adopted the Materials Manager title, Wisniewski performed the duties of that role in addition to those of the Customer Service Manager position that he held prior to Sampson's termination. Spalding claimed that he selected Wisniewski for Sampson's role because Wisniewski could perform Sampson's "duties without negative impact on production, but not vice versa." DE 30-2, Spalding Affidavit, PageID 155.

Sampson inquired about other positions within Flex N Gate shortly after her separation from Nine Mile. She connected with Karrie Eilers, the Materials Manager at Flex N Gate Royal Oak ("Royal Oak"), about a Shipping Supervisor position at that facility. At that time, Royal Oak anticipated its Shipping Supervisor would take on a different role within the company, leaving the position vacant. Eilers told Sampson about the opening, and she applied and interviewed for the position. After the interview, Eilers sought approval to hire Sampson from Royal Oak's "general manager." The general manager agreed, and Eilers contacted Royal Oak's HR department to initiate the hiring process. Later that day, however, a new customer demand caused the "production needs at FNG Royal Oak [to] change[] dramatically." DE 30-4, Eilers Dec., PageID 163; DE 30-9, Eilers Dep., PageID 352. As a result, Royal Oak's Shipping Supervisor decided to remain in the position and there was no longer a need for a replacement. Eilers reached out to Sampson and, without explaining further, told her that "[e]verything was squashed so I can't hire you now." DE 31-24, Eilers Email, PageID 515.

---

[2] Nine Mile planned on terminating both positions on August 30, but Sampson requested off work that day and was terminated when she returned on September 3.

Eventually, after receiving a right-to-sue letter from the Equal Employment Opportunity Commission ("EEOC"), Sampson filed suit alleging claims of sex discrimination and retaliation under federal and Michigan law, in addition to violations of the Americans with Disabilities Act, Persons with Disabilities Civil Rights Act, and the Family and Medical Leave Act. By the time the case reached the summary judgment stage, however, Sampson dropped all but her state and federal sex discrimination claims. The district court then granted Flex N Gate's summary judgment motion on both counts. Sampson now appeals.

## II.

We review de novo a district court's decision on summary judgment. *Hrdlicka v. Gen. Motors, LLC*, 63 F.4th 555, 566 (6th Cir. 2023). Summary judgment is appropriate only if there is no genuine dispute of material fact and the moving party shows that it is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). A genuine dispute of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party" after drawing all inferences in its favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). However, "[t]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient" to avoid summary judgment. *Id*. at 252.

## III.

Sampson argues that Flex N Gate discriminated against her on the basis of sex both when it terminated her from Nine Mile and rescinded her job offer from Royal Oak. She further alleges that Flex N Gate's justification for each decision, i.e., the implementation of the RIF plan and the unavailability of the Shipping Supervisor position, was pretextual. The district court disagreed. It found that Sampson failed to make a prima facie case of discrimination and, assuming that she

had, that Sampson failed to show that Flex N Gate's justification for her termination was pretextual. As explained in depth below, we affirm.

Under Title VII and Michigan's Elliott–Larsen Civil Rights Act ("ELCRA"), it is unlawful for an employer to, among other things, terminate, refuse to hire, or discriminate against an individual with respect to employment or compensation, on the basis of a person's sex. 42 U.S.C. § 2000e-2(a)(1); Mich. Comp. Laws § 37.2202(1)(a). A plaintiff may prove discrimination under these laws with either direct or circumstantial evidence. *See Peeples v. City of Detroit*, 891 F.3d 622, 633 (6th Cir. 2018); *Redlin v. Grosse Pointe Pub. Sch. Sys.*, 921 F.3d 599, 606 (6th Cir. 2019). "[D]irect evidence is that evidence which, if believed, requires the conclusion that unlawful discrimination was at least a motivating factor in the employer's actions." *Peeples*, 891 F.3d at 633 (alteration in original) (quoting *Jacklyn v. Schering-Plough Healthcare Prods. Sales Corp.*, 176 F.3d 921, 926 (6th Cir. 1999)). It is evidence "that proves the existence of a fact without requiring any inferences." *Rowan v. Lockheed Martin Energy Sys., Inc.*, 360 F.3d 544, 548 (6th Cir. 2004). Circumstantial evidence, on the other hand, is proof that does not inherently establish discriminatory animus, but does allow a factfinder to draw a reasonable inference that discrimination occurred. *Kline v. Tenn. Valley Auth.*, 128 F.3d 337, 348 (6th Cir. 1997).

Because Sampson presented only circumstantial evidence of discrimination, we evaluate her claims through the *McDonnell Douglas* burden shifting framework. *Redlin*, 921 F. 3d 599, 606–07; *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–04 (1973). Under that framework, the plaintiff must first make a prima facie case of discrimination. *Davis v. Cintas Corp.*, 717 F.3d 476, 491 (6th Cir. 2013). On a successful showing, the burden shifts to the defendant to cite some legitimate, nondiscriminatory reason for the adverse action. *Id.* And in

response, the plaintiff must show that the employer's cited reason was pretext for discrimination. *Spees v. James Marine, Inc.*, 617 F.3d 380, 389 (6th Cir. 2010)

Ordinarily, to make a prima facie case of sex discrimination, a plaintiff must establish that she 1) is a member of a protected class; 2) was qualified for her job; 3) suffered an adverse employment action; and 4) was replaced by a person outside the protected class or treated differently than similarly situated, non-protected employees. *See Redlin*, 921 F.3d at 606–07. However, where a plaintiff was terminated as a result of an RIF, the fourth prong above is modified. *Rowan*, 360 F.3d at 547. Instead, a plaintiff must show "additional direct, circumstantial, or statistical evidence tending to indicate that the employer singled out the plaintiff for discharge for impermissible reasons." *Geiger v. Tower Auto.*, 579 F.3d 614, 623 (6th Cir. 2009) (quoting *Barnes v. GenCorp Inc.*, 896 F.2d 1457, 1465 (6th Cir. 1990)).

This dispute hinges on the fourth prong of Sampson's prima facie case. Sampson claims that she was not terminated as part of an RIF, must make only a standard prima facie case, and that she has done so in demonstrating that she was replaced by Wisnewski.

We have held that an RIF "occurs when business considerations cause an employer to eliminate one or more positions within the company." *Barnes*, 896 F.2d at 1465. However, "[a]n employee is not eliminated as part of a work force reduction when he or she is replaced after his or her discharge." *Id.* But "a person is not replaced when another employee is assigned to perform the plaintiff's duties in addition to other duties, or when the work is redistributed among other existing employees already performing related work." *Id.*

Here, despite the fact that Wisnewski took the Materials Manager title and assumed the position's duties after Sampson was terminated, he did not "replace" her within the meaning of an RIF because he maintained his original customer service responsibilities. DE 30-8, Wisnewski

Dep., PageID 343 ("There were two positions, two people, myself and her doing two separate things, and it was absorbing all of those responsibilities under one person.") Spalding also stated that this consolidation was part of the reason Sampson was included in the RIF. That is, he believed that "Wisnewski could assume the remainder of Ms. Sampson's duties without a negative impact on production, but not vice versa." DE 30-2, Spalding Aff., PageID 155. Given this undisputed testimony, Wisnewski did not replace Sampson and she was terminated as a result of the RIF. *See Pierson v. Quad/Graphics Printing Corp.*, 749 F.3d 530, 537 (6th Cir. 2014) ("[W]e have consistently found that a 'plaintiff's job was simply eliminated' when the plaintiff's 'former duties were assumed by [a younger employee], who performed them in addition to his other functions.'" (quoting *Sahadi v. Reynolds Chem.*, 636 F.2d 1116, 1117 (6th Cir. 1980))); *Geiger*, 579 F.3d at 623 ("Strong was selected to perform Geiger's former duties in addition to her former duties as the MRO Buyer for the Clinton facility. Strong thus did not replace Geiger but was hired to perform both his duties and her own.").[3]

Sampson would still make a prima face case under the modified RIF standard if she showed that she was singled out for inclusion in the RIF plan for discriminatory reasons, but she has not done so. Sampson briefly argues, in a footnote, that she had more experience than Wisnewski and that, without citation to the record, held "superior qualifications" for the position. CA6 R. 22, Sampson Br., 20–21 n.10. But absent objective evidence, an employee's "subjective determination that [she] was better qualified" for a position than her counterpart is not sufficient to make a prima

---

[3] Sampson makes much of the fact that Wisnewski and Spalding, in their depositions, agreed that Wisnewski "replaced" Sampson. However, replacement in this context is a legal term of art and their comments bear little to no meaning as to whether Sampson was replaced under the standard outlined in *Barnes*.

facie case of discrimination. *Copeland v. Regent Elec., Inc.*, 499 F. App'x 425, 433 (6th Cir. 2012) (quoting *LaGrant v. Gulf & Western Mfg. Co.*, 748 F.2d 1087, 1091 (6th Cir. 1984)).

However, even assuming that she made a prima facie case, Sampson does not rebut Flex N Gate's nondiscriminatory explanation for why it retained Wisnewski and not her.[4] That is, there is no genuine dispute of fact because Sampson failed to show that she could have performed the duties of both Materials Manager *and* Customer Service Manager. On the other hand, Spalding explained that Wisnewski had started to absorb Sampson's Materials Manger responsibilities before she was terminated, both when her performance struggled in 2015 and after she abruptly left in 2017, and that he did not believe that she could take on Wisnewski's responsibilities in

---

[4] In an effort to show pretext, Sampson makes several underdeveloped arguments, many of which, even if proven, do not constitute pretext. Of the more substantial claims, Sampson suggests that Flex N Gate shifted its explanation for including her in the RIF over the course of litigation. Specifically, she claims that Flex N Gate represented to the EEOC that she was terminated in the RIF because she was less senior than other employees, but it now focused on performance issues. However, this argument misconstrues Flex N Gate's letter to the EEOC. Although true that it misrepresented Sampson's seniority, nowhere in the letter does Flex N Gate claim that it included Sampson in the RIF because she was less senior than others. In fact, the letter simply states that the Materials Director position was "identified to be eliminated" and that "[t]he Company's decision was based solely on the needed reduction in labor costs and decrease in sales." DE 31-12, EEOC Response, PageID 487, 489. Spalding's later comments that Sampson was included in the RIF due to performance issues, therefore, did not constitute a shift in reasoning and cannot establish pretext. Similarly, Sampson argues that a jury could find pretext due to: (1) her deposition testimony that Spalding excluded her from management meetings, and (2) an email in which Spalding acknowledged that HR asked him to implement the RIF as to the Quality Control Liaison, Shift Leader, and Sampson "at the same time to show evidence that we are not picking on the minority folks." Even if Sampson had met her burden of presenting a prima facie case, neither of these things would allow a jury to find that her inclusion in the RIF was pretextual. First, Sampson does not dispute or engage with Flex N Gate's explanation that she was not included in management meetings because she was not initially rehired into a managerial position. Sampson does not point to any evidence as to when Spalding asked her not to attend management meetings or whether she requested to be included in those meetings after again attaining a management role. Simply put, she has not put forth enough factual material to make the meeting-exclusion issue a jury question. Second, we agree with the district court that "in context," the email from Spalding relates only "to the timing of the personnel actions, not their substance or the genuineness of the RIF." *Sampson v. Flex N Gate Nine Mile LLC*, 2023 WL 4681124, at *6 (E.D. Mich. July 20, 2023).

addition to her own. In failing either to establish a prima facie case or rebut Flex N Gate's nondiscriminatory justification for her termination, Sampson did not meet her burden under the *McDonnell Douglas* framework.

Sampson next argues that Flex N Gate's decision not to hire her for the Shipping Supervisor position at Royal Oak was discriminatory. To make a prima facie case for failure to hire, a plaintiff must show: (1) the applicant belongs to a protected class; (2) the applicant applied and was qualified for a job; (3) despite the applicant's qualifications, she was rejected; and (4) the applicant was rejected in favor of another, similarly situated person who was not a member of the applicant's protected class. *See White v. Columbus Metro. Hous. Auth.*, 429 F.3d 232, 240 (6th Cir. 2005); *Overall v. RadioShack Corp.*, 202 F. App'x 865, 868 (6th Cir. 2006). However, if the position was not filled at the time of the rejection, the plaintiff can establish the fourth prong of her prima facie case by showing that "the position remained open and the employer continued to seek applicants from persons of complainant's qualifications." *White*, 429 F.3d at 240 n.3 (quoting *McDonnell Douglas*, 411 U.S. at 802).

Again, Sampson fails to establish the fourth prong of the prima facie case. When Sampson reached out to her Flex N Gate contacts about open positions after her termination from Nine Mile, Eilers informed her that Royal Oak anticipated needing a new Shipping Supervisor. At that time, Eilers was under the impression that Royal Oak's present Shipping Supervisor planned on leaving the position for a different role in the company. Sampson interviewed for the position and Royal Oak prepared to hire her; but, shortly afterwards, the position became unavailable when the Shipping Supervisor decided to remain in the role after unexpected, client-driven production changes at Royal Oak. The Shipping Supervisor position remained unavailable, and the employee occupying the role stayed in place until late 2020. Because the position never became available,

Sampson cannot show that she was either rejected in favor of another or that "the position remained open *and* the employer continued to seek applicants[.]"[5] *White*, 429 F.3d at 240 n.3 (emphasis added). As a result, Sampson cannot make a prima facie case of discrimination for failure to hire.

Sampson failed to meet her burden on both her termination and failure to hire claims. She has not shown that there is a genuine dispute of material fact, and that Flex N Gate is not entitled to summary judgment as a matter of law. As a result, we affirm the district court's ruling in full.

---

[5] Sampson takes issue with the fact that Royal Oak interviewed other people for the Shipping Supervisor position after she was notified that the position became unavailable. But Eilers testified that she interviewed people who had already submitted their resume, even though it "wouldn't have gone through because the position was removed." DE 30-9, Eilers Dep., PageID 355. Sampson may have shown that "[Flex N Gate] continued to seek applicants," but cannot demonstrate that "the position remained open[.]" *White*, 429 F.3d at 240 n.3. But it was her burden to show both. *Id.* Even if this was sufficient for Sampson to make a prima facie case for discrimination, she has not shown that Flex N Gate's explanation for not hiring her, that the position did not become vacant as expected, was pretext for discrimination. Absent that inference, summary judgment is still appropriate for Flex N Gate.