**NOT RECOMMENDED FOR PUBLICATION**
File Name: 05a0052n.06
Filed: January 19, 2005

No. 03-6222

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

| | | |
|---|---|---|
| JUDY C. THOMAS, | ) | |
| | ) | |
| Plaintiff-Appellant, | ) | |
| | ) | |
| v. | ) | **ON APPEAL** FROM THE UNITED |
| | ) | STATES DISTRICT COURT FOR THE |
| OWEN ELECTRIC COOPERATIVE, INC., | ) | EASTERN DISTRICT OF KENTUCKY |
| | ) | |
| Defendant-Appellee. | ) | |
| | ) | |
| | ) | |
| | ) | |
| | ) | |
| | ) | |

BEFORE: MERRITT, DAUGHTREY, and SUTTON, Circuit Judges.

MERRITT, Circuit Judge. Plaintiff Judy C. Thomas appeals the District Court's grant of summary judgment to her former employer, defendant Owen Electric Cooperative, Inc. (the "Co-op"), on her state claims of sex and age discrimination in violation of the Kentucky Civil Rights Act, Ky. Rev. Stat. Ann. § 344.040, her federal claims of sex discrimination in violation of the federal Equal Pay Act, 29 U.S.C. § 206(d), and her state claims of retaliation. Thomas's claims arise from the Co-op's decision to restructure her position and their subsequent treatment of her in effectuating that change. We agree with the District Court that the Co-op had a legitimate business reason for changing the nature of Thomas's position and that she has failed to produce evidence sufficient to

-1-

create a genuine issue of material fact. Hence we find that the order of summary judgment was appropriate and AFFIRM the District Court's judgment.

## I. Background

Judy Thomas was hired as a dispatcher for the Co-op in 1986. She served in this capacity until May of 2001 when Robert Marshall, the President and CEO of the Co-op, restructured the dispatcher position. When Marshall came to the Co-op in January of 2000, there were five dispatchers, all of whom were female. Marshall indicated concern regarding the dispatcher's lack of field knowledge and experience but made no immediate changes. In January 2001, the Co-op retained the services of the National Consulting Group to conduct an organizational analysis. After discussing his concerns with the consultants, Marshall decided to change the dispatcher position. According to the Co-op, dispatchers would no longer merely relay information regarding power outages and customer complaints to personnel in the field, but would analyze problems from the dispatch room and then direct field personnel to restore power in the most efficient manner.

In May of 2001, the Co-op posted a revised position description and began accepting applications. According to the old description, the dispatcher was "[t]o assist the maintenance department during outages" and "provide general and *non-technical* information in response to questions from the public," whereas the revised description required dispatchers "[t]o provide work direction and leadership during outages" and "provide general and *technical* information in response to questions from the public." Also, the new job description explicitly added several new job responsibilities. For instance, the new dispatchers would be required to "[a]nalyze[] problems as they occur and take the appropriate action to alleviate such problems." Additionally, the dispatchers would have the responsibility to "[p]rovide[] guidance to field personnel during outages by

-2-

analyzing all of the useful information obtained from the various systems available to the dispatcher." The plaintiff maintains that these alterations were merely semantic, but the position description also listed new education and experience standards stating that completion of a lineman's training course, five years of field experience in line construction, and one year in a supervisory position were desired qualifications. The position was reclassified from a Grade 6, paying between $13.02 and $18.25 per hour, to a Grade 11, paying between $19.28 and $27.75 per hour. Shortly thereafter, in the fall of 2001, the Co-op changed the position title from Dispatcher to Systems Operator. The plaintiff maintains that she was told that she would be considered for the new position automatically.

The Co-op hired four new dispatchers/systems operators, all of whom were males who transferred from journeyman lineman positions. No female linemen applied for the position. The former dispatchers remained in dispatch during a training period in which the new dispatchers/systems operators learned the daily tasks of the job and the computer programs used. During this period, the former dispatchers, including Thomas, were given the title Assistant Dispatcher and were partially responsible for training the new dispatchers/systems operators. Two of the former dispatchers moved to new jobs at the Co-op. One of the former dispatchers, Cindy Wilhoite, remained in dispatch and was eventually promoted to the new position of systems operator in February of 2002, despite not having all of the desired qualifications.

During the training of the new dispatchers, the Co-op considered the plaintiff for numerous other positions and offered her several employment opportunities. She applied and interviewed for an Engineering Clerk position, a job that was eventually awarded to one of the other former dispatchers. Thomas asserts that she was qualified for a customer service position, but the Co-op

-3-

did not consider her for that position. On August 21, 2001, Thomas met with the Co-op president and another official regarding a position as Special Services Clerk. Feeling she was not qualified for this job, the plaintiff rejected the Co-op's offer in writing. Following this rejection, Marshall, the Co-op president, wrote Thomas a memorandum stating that he was committed to providing her with the time and training to appropriately prepare for the position as Special Services Clerk. Marshall went on to explain that if she did not accept the Special Services Clerk position, the only job he could offer her was a meter-reading position. In a meeting on August 30, 2001, the plaintiff again rejected the Special Services Clerk position. When Marshall inquired as to whether she would be interested in the meter reading job, she responded that she was physically unable to do the job due to a heart condition. Marshall then indicated that the Co-op anticipated creating a new Field Services position, which would have paid more than her job as a dispatcher. The plaintiff agreed that she could perform the duties of this type of position or would "die trying." Despite the employment opportunities presented to the plaintiff at the August 30th meeting, she opted to accept the Co-op's voluntary early retirement program. She received an early retirement lump sum payment of $144,868 plus a severance payment equal to one year's base salary in the amount of $29,848.

Thomas brought suit claiming sex and age discrimination in July of 2002. On September 5, 2003, the District Court granted the Co-op's motion for summary judgment and Thomas properly appealed.

## II. Analysis

This Court reviews the grant of summary judgment de novo, applying the same standards as the District Court. *Rowan v. Lockheed Martin Energy Systems, Inc.* 360 F.3d 544, 547 (6th Cir.

2004); *Terry Barr Sales Agency, Inc. v. All-Lock Co., Inc.* 96 F.3d 174, 178 (6th Cir. 1996). Summary judgment is appropriate only if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). When reviewing a motion for summary judgment, we must view the evidence in the light most favorable to the party opposing the motion. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587-88 (1986).

## A.  State Law Discrimination Claims

Under Kentucky law, it is unlawful for an employer to "fail or refuse to hire, or to discharge any individual, or otherwise to discriminate against an individual . . . because of the individual's . . . gender [or] age." Ky. Rev. Stat. Ann. § 344.040(1). Kentucky courts begin their examination of claims brought under this statute by utilizing the *McDonnell Douglass* burden-shifting analysis. *Brooks v. Lexington-Fayette Urban County Housing Authority*, 132 S.W. 3d 790, (Ky. 2004) (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973); *see also Pierce v. Commonwealth Life Ins. Co.*, 40 F.3d 796, 802 & n.8 (6th Cir. 1994) ("Kentucky courts apply the *McDonnell Douglas* framework to discrimination cases brought under state law.") (citing *Kentucky Ctr. for the Arts v. Handley*, 827 S.W.2d 697, 699 (Ky. Ct. App. 1991)). The statute thus requires plaintiff employees to bear the initial burden of proving a *prima facie* case of discrimination by demonstrating: (1) that she is a member of a protected class; (2) that she was qualified for the job; (3) that she suffered an adverse employment decision; and (4) that similarly situated non-protected employees were treated more favorably. *McDonnell Douglas*, 411 U.S. at 802. Upon the plaintiff's establishment of a prima facie case, the burden shifts to the employer "to articulate a legitimate non-discriminatory reason" for the decision. *Id*. Finally, the plaintiff must be afforded an opportunity to demonstrate that the stated reason is merely a pretext, masking a discriminatory motive. *Id*. at 804-05.

-5-

In granting summary judgment to the Co-op, the District Court presented two alternative grounds. First, the court ruled that Thomas failed to establish a prima facie case of discrimination. Second, the court determined that even if Thomas had carried her preliminary burden, summary judgment would still be appropriate. While we find that the District Court erred in its prima facie determination, we affirm the court's grant of summary judgment on these claims. The Co-op successfully articulated a legitimate, non-discriminatory reason for their employment decision, and Thomas failed to present evidence that this reason was a pretext for discrimination.

The District Court found that Thomas met only three of the four prongs of *McDonnell Douglas* and thus failed to establish a prima facie case of age or sex discrimination. The court had little trouble determining that Thomas was a member of protected age and gender classes, that she suffered an adverse employment decision in not being hired for the revised dispatcher position, and that four of the five replacement dispatchers were younger men. Yet the court found that Thomas did not establish a prima facie case of age or sex discrimination as she was not "qualified" for the new dispatcher position. This ruling was based on the fact that Thomas did not have several of the "qualifications" for the job. She had not completed the lineman's training course. Nor did she have field experience in line construction. But these education and experience criteria were listed in the job description as "desired" rather than "required." The only "required" educational qualification was a high school diploma or equivalency, and there was no "required" level of experience. Employment discrimination actions are not defeated simply because plaintiffs do not have each and every desired qualification. "The prima facie burden of showing that a plaintiff is qualified can . . . be met by presenting credible evidence that his or her qualifications are at least equivalent to the minimum objective criteria required for employment in the relevant field." *Wexler v. White's Fine*

*Furniture, Inc.*, 317 F.3d 564, 575-76. (6th Cir. 2003). Thomas plainly had the minimum objective qualifications for the revised position. Thus, the District Court erred in finding that Thomas failed to meet her prima facie burden.

As Thomas successfully established a prima facie case of sex and age discrimination, the burden should have shifted to the Co-op to articulate a legitimate, non-discriminatory reason for choosing the male candidates over the plaintiff. The evidence supports the District Court's conclusion that the Co-op made a legitimate business decision to lodge greater technical and supervisory responsibilities in the revised dispatch position. In furtherance of this decision, the Co-op chose to hire dispatchers who were more highly qualified than the plaintiff. Thomas contends that the position did not actually change significantly, and that she was capable of doing the job without the desired qualifications. But, it is well-established that "[t]he soundness of an employer's business judgment may not be questioned as a means of showing pretext." *Chappell v. GTE Products Corp.*, 803 F.3d 890, 898 (6th Cir. 1997); *see also Rowan v. Lockheed Martin Energy Systems, Inc.*, 360 F.3d 544, 550 (6th Cir. 2004) ("The plaintiffs may not simply substitute their own business judgment for that of the defendant."). In order to survive a summary judgment motion, the plaintiff must demonstrate that a reasonable jury could conclude that the proffered business decision was merely a pretext for unlawful discrimination. The evidence demonstrates that the Co-op made serious and real changes to the dispatcher position. The revised position had greater responsibility and authority, greater knowledge and skill requirements, and higher pay rates than the dispatch position held by Thomas. There is no evidence that these changes were made to camouflage the Co-op's attempt to replace their female employees with males or their older employees with younger

-7-

ones. We therefore affirm the District Court's grant of summary judgment to the defendant on the state law discrimination claims.

## B. Federal Equal Pay Act Claims

The Equal Pay Act prohibits employers from paying an employee a lower wage than that paid to employees of the opposite sex for equal work. 29 U.S.C. § 206(d)(1). To make out a prima facie case under this statute, a plaintiff must show that "an employer pays different wages to employees of opposite sexes 'for equal work on jobs the performance of which requires equal skill, effort, and responsibility, and which are performed under similar working conditions.'" *Corning Glass Works v. Brennan*, 417 U.S. 188, 195 (1974) (quoting 29 U.S.C. § 206(d)(1)); *accord Buntin v. Breathitt County Board of Education*, 134 F.3d 796 (6th Cir. 1998). If a plaintiff carries the initial burden of demonstrating unequal pay for equal work, the defendant employer has the opportunity of showing that the unequal pay is justified due to one of four statutory exceptions: "(i) a seniority system, (ii) a merit system, (iii) a system which measures earnings by quantity or quality of production; or (iv) a differential based on any other factor other than sex." 29 U.S.C. § 206(d)(1). The District Court ruled that Thomas failed to make out a prima facie case and that, even if she had, the Co-op established that any pay differential was based on a non-gender factor.

It is undisputed that Thomas was paid a lower wage than that paid to the replacement dispatchers. Instead the parties dispute whether the male employees in the new positions and the female employees in the old positions performed equal work. Equal work "does not require that the jobs be identical," but only that there exist "'substantial equality of skill, effort, responsibility and working conditions.'" *Odomes v. Nucare, Inc.*, 653 F.2d 246, 250 (6th Cir. 1981). It is undisputed that the old dispatchers and their male replacements faced similar working conditions. Thus, if

-8-

Thomas demonstrates that the two dispatcher positions required substantially equal skill, responsibility, and effort, she has succeeded in making out a prima facie case. The Co-op contends that the new dispatchers had greater skills and responsibilities than the females they replaced.

Regarding the skill differential, the Co-op asserts that the new dispatchers had greater technical proficiency evidenced by field experience and linemen's training. Thomas contends that the inquiry should focus not on the qualifications and skills of the persons holding the job but on the skill *required* to do the job. But, the federal regulations indicate that experience and training are relevant to the determination of "skill" in suits under the Equal Pay Act:

> Where the amount or degree of skill required to perform one job is substantially greater than that required to perform another job, the equal pay standard cannot apply even though the jobs may be equal in all other respects. *Skill includes consideration of such factors as experience, training, education, and ability*.

29 C.F.R. § 1620.15(a) (emphasis added).

The Co-op also claims that the new dispatchers had greater levels of responsibility than the replaced dispatchers. Rather than being responsible simply for "information relay," the new dispatchers were expected as the District Court found, "to analyze problems that occur in the field, direct linemen to the exact location of the problem, provide advice on how to restore service, and give direction as to the proper action to take." "Responsibility" according to the federal regulations, "is concerned with the degree of accountability required in the performance of the job, with emphasis on the importance of the job obligation." 29 C.F.R. § 1620.17(a). This regulation points out that there is a difference in responsibility where one employee is called upon to "assume[s] supervisory duties" where the other does not. *Id.* § 1620.17(b)(1). The new dispatchers were responsible for providing guidance to personnel on the ground in a way that the former dispatchers were not. The evidence demonstrates that the job responsibilities were greater after the change in

position and that the new dispatchers were more skilled than the plaintiff as measured by relevant education and experience. Thus, the District Court's ruling that the jobs were not substantially equal and thus did not call for equal pay appears correct. As Thomas failed to make out a prima facie case of an Equal Pay Act violation, we affirm the grant of summary judgment for the Co-op.

## C. Retaliation

Thomas also claims that the Co-op retaliated against her for her opposition to the unlawful age and sex discrimination of the Co-op. In the retaliation context, a plaintiff can establish a *prima facie* case by showing that (1) she engaged in protected opposition to discrimination, (2) that her exercise of protected rights was known to the Co-op, (3) that she was subjected to an adverse employment action subsequent to or contemporaneous with the protected activity; and (4) that there was a causal relationship between the protected activity and the adverse employment action. *Canitia v. Yellow Freight System, Inc.*, 903 F.2d 1064, 1066 (6th Cir. 1990). Thomas claims that she made several complaints about pay disparity to Co-op officials. First, after the replacement dispatchers started, she went to one of the Co-op's vice presidents and asked if her pay rate would be raised to the level the male replacement was being paid. Second, when interviewing for the engineering clerk position, she said that she would not take a pay cut. Importantly, these complaints occurred after the dispatch position was restructured and after men were hired for the new positions. Thomas claims that in response to her two comments, the Co-op retaliated by refusing to offer her the engineering clerk position and refusing to consider her for a job in customer service. She also maintains that the Co-op's offers of other positions were adverse employment actions as she was unqualified for the jobs and they did not offer the same opportunity for overtime pay. Assuming this Court were to find that Thomas's complaints of pay disparity amounted to protected opposition to

-10-

the Co-op's policies, her prima facie case of retaliation would plainly fail as there is no evidence of any causal connection between her complaints and any subsequent employment decisions. No reasonable jury could find that the Co-op's actions toward Thomas after the new dispatchers were hired were retaliatory. As the District Court held, "the evidence shows that the Co-op made specific and affirmative efforts to find jobs for Plaintiff." The Co-op also offered to provide the plaintiff with additional training so that she could perform the jobs she was offered. Just before opting for retirement, she was offered a position in field services, which would have meant a pay increase. The plaintiff does not put forth any facts to call these conclusions into question. Thus, we affirm the District Court's grant of summary judgment against the plaintiff's retaliation claim.

## V.  Conclusion

Even drawing all inferences in the favor of the plaintiff, there is no genuine issue of material fact regarding any of Thomas's claims. Her discrimination, equal pay, and retaliation are not supported by the evidence in the record. We, therefore, AFFIRM the District Court's grant of summary judgment for the defendant.